## JACOB PUSHCART v. NEW YORK SHIPBUILDING COMPANY.

Argued November 10, 1913—Decided February 24, 1914.

In order to bring a money verdict within the meaning of a quotient verdict, it must appear that there was an agreement by the jurors that their finding should be determined by the quotient resulting from the division of the sum of the estimates of each juror divided by the number of jurors. It is not enough that the quotient be arrived at in the manner indicated, but in addition to this there must be proof of an agreement by the jurors that the verdict be determined in such manner.

On rule to show cause.

Before Justices SWAYZE and BERGEN.

For the rule, *Gaskill & Gaskill.*

*Contra, Wescott & Wescott.*

The opinion of the court was delivered by

BERGEN, J. The plaintiff brought this action to recover from the defendant for injuries which he suffered while in the employment of the defendant because of the negligence of the defendant in not furnishing a proper tool to a fellow workman. The result of the trial was a verdict in favor of the plaintiff for $3,500, and upon application by the defendant a rule to show cause why a new trial should not be granted was allowed, in support of which numerous reasons are assigned, not all of which were pressed at the argument.

The first matter urged is that the defendant was entitled to a motion for a nonsuit, which the trial court denied, upon the ground that the plaintiff was guilty of contributory negligence in that he did not use the care to observe the condition of the tool that was required of him by law. The plaintiff's case showed that he was engaged as a helper to another employe of the defendant who was a skilled mechanic, and that the injury resulted from a defective hammer used by his fellow workman, and the contention of the defendant here is that the plaintiff was charged with the duty of observing the condition of the tool used by the other workman. No authority is cited in the brief to sustain this proposition, but assuming this to be so, the plaintiff testified that he did not see the hammer which his partner was using. What he does say is that the partner "got his hammer right over there in his closet; he got a closet over there; I don't know what that hammer is." From this it appears that the fellow servant had procured the hammer from a closet where he kept it, and we fail to see how the plaintiff could be charged with the duty of examining a tool used by a fellow servant and which

the master had supplied him with, who if he had made the ordinary inspection would have seen the defect. Whether the plaintiff had the opportunity to examine this hammer is a question of fact, and there was evidence on this question which should be submitted to the jury, and therefore the refusal to nonsuit for this reason was not error. We have examined the other questions argued on this branch of the case and find no merit in them.

It is next argued that the condition of the plaintiff's leg, that is, the presence of varicose veins, naturally increased the effect of the injury, but this was a question of fact, and we cannot say from the evidence that the severe injury which resulted from the blow was in any way accelerated by the physical condition of the plaintiff's leg. Up to that time he was able to use his legs and perform any ordinary service such as that in which he was engaged, and now, according to the testimony, an inference may be drawn that he will never again be able to engage in any work which requires the use of his legs. And the court submitted to the jury the question, to what extent the earning capacity of the plaintiff had been impaired by the injury which he suffered from the blow inflicted by the hammer, saying: "For any time, any earnings that he actually lost by reason of this injury, if he is entitled to recover, you should take that into consideration in determining the amount." We think that the extent of the injury resulting from the blow was properly submitted by the trial court to the jury.

The next and perhaps most important point is that the jury were guilty of misconduct in rendering what is defined to be a quotient verdict. A quotient verdict is one where the jury take the sum of each estimate submitted by the jurors and divide it by the number of jurors, and if this clearly appeared, it would be our duty to set aside this verdict, but in order to hold that the finding of a jury is a quotient verdict it must also appear that there was a positive prior agreement to abide by the result of this process, and even if there may have been such an agreement, if the jury subsequently re-

fused to abide by it, and find a verdict greater or less than the quotient, it would not be error.

It appeared by the testimony of ten of the jurors, taken on this rule to show cause, and that of the two remaining jurors one was dead and the other had no recollection, that the verdict was not arrived at by any such agreement. All that appears is that each juror stated the amount which he thought the plaintiff was entitled to by way of damages, and that these amounts were put down on a paper by one of the jurors, and he divided the sum by twelve which produced something over $3,500, but all of the ten jurors testified that there was no agreement to be bound by any such process, and most of them say they never saw the paper. It was the act of one of the jurors on his own initiative, and the verdict was arrived at independently of any such calculation. Under such circumstances there is no proof that the verdict was a quotient verdict within the meaning in law of such a term.

The result is that the rule to show cause should be discharged, with costs.