39 N.J. Super. 222 (1956)
120 A.2d 793
ARTHUR E. CERF AND MARIETTA CERF, PLAINTIFFS,
v.
YVONNE SMOLDEREN AND GRENVILLE R. GIBB, JR., DEFENDANTS. YVONNE SMOLDEREN, PLAINTIFF,
v.
ARTHUR E. CERF, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided February 16, 1956.
*223 Mr. Arthur C. Gillette argued for the movant, Yvonne Smolderen.
Mr. Harvey G. Stevenson, contra, for Arthur Cerf.
Mr. Paul J. O'Neill, contra, for Grenville R. Gibb, Jr.
Mr. Harold R. Teltser argued for the movant, Marietta Cerf.
Mr. Arthur C. Gillette, contra, for Yvonne Smolderen.
Mr. Paul J. O'Neill, contra, for Grenville R. Gibb, Jr.
*224 FOLEY, J.C.C. (temporarily assigned).
These actions, consolidated by order, arose from a three-car collision which occurred on the New Jersey Turnpike near mile post 82 in East Brunswick, New Jersey, on October 17, 1952. All vehicles were proceeding northerly on that highway. As they approached the scene of another accident the tractor-trailer, operated by Gibb, was slowed down and had either stopped or was about at a standstill when it was struck in the rear by the vehicle of Arthur Cerf. Simultaneously with this occurrence or immediately before or after the happening of it the Smolderen car was in collision with the Cerf car and then veered to its right, coming to a stop on a slope beyond the shoulder of the roadway. Marietta Cerf, wife of Arthur, was an invitee in the Cerf car. Mr. and Mrs. Cerf sustained severe injuries, as did Miss Smolderen, and both the Smolderen and Cerf vehicles were badly damaged.
As a result an action was instituted by Miss Smolderen against Arthur Cerf only, for property damage and personal injuries, to which the defendant filed a counterclaim for his property damage.
Thereafter both Cerfs instituted an action for personal injuries, joining Gibb and Smolderen, with a property damage count by Arthur against Gibb. Whereupon, Miss Smolderen cross-claimed against Gibb for personal injuries.
The several claims having been consolidated for trial, the cause proceeded by common consent as if Gibb and Arthur Cerf were jointly and severally charged with negligence by Miss Smolderen, and she and Gibb were similarly charged by the Cerfs.
The court charged the effect of negligence and contributory negligence of the respective drivers but the issue of Mrs. Cerf's contributory negligence was withdrawn and the jury instructed that proof of negligence on the part of Smolderen or Gibb, or both, would entitle her to a verdict.
On the Smolderen claim the jury found no cause of action, a poll establishing that verdict to have been arrived at by a 10 to 2 vote.
*225 On the Arthur Cerf claim a unanimous finding of no cause of action was made.
On the Marietta Cerf claim the jury unanimously found no cause of action as to Gibb, and against Miss Smolderen in the amount of $1,350.
Mrs. Cerf now moves for a new trial as to damages only as against Miss Smolderen, upon the ground that the award in her behalf was inadequate. Upon the oral argument her attorney conceded that the verdict was so inadequate as to require a new trial, but asserted that for reasons urged in her own motion for new trial the retrial should be on all issues as to both defendants.
The Smolderen motion is posited on three propositions: first, that the poll of the jurors reveals an inconsistency in the verdicts against Smolderen on her own case and that returned against her in favor of Mrs. Cerf; second, that the verdicts against her are contrary to the weight of the evidence; and lastly, that the verdict in favor of Mrs. Cerf was a "quotient verdict," and, as such, tainted the jury's findings on all of the issues embraced by the consolidated cases.
In support of the first contention it is strenuously argued that the failure of two of the jurors to render patently consistent verdicts established a want of understanding on their part which amounted to misconduct. Reliance is placed on the holding in Panko v. Flintkote Co., 7 N.J. 55 (1951), where reversal upon the ground of jury misconduct was predicated on a showing that one of the jurors had obtained information from an extraneous source, which was concerned with the insurance policy of the defendant. There, in defense of plaintiff's judgment it was argued that since a verdict may be reached by ten jurors the misconduct of one is inconsequential. Much is made of the reasoning of the Court in that case that a jury must act as a unit of 12 although the verdict of ten is permitted by N.J.S. 2A:80-2. But plainly this language must be evaluated with a view to the character of the jury conduct in question. Referring to the acquisition by one juror of the information above noted, Justice Ackerson pointed out that the "situation thus presented *226 has serious implications, at least so far as this juror's fairness and impartiality are concerned, which should not be condoned, since it reflects discredit and suspicion on the purity of the administration of justice in general."
At another point the Justice said:
"It is well settled that the test for determining whether a new trial will be granted because of the misconduct of jurors or the intrusion of irregular influences is whether such matters could have a tendency to influence the jury in arriving at its verdict in a manner inconsistent with the legal proofs and the court's charge. If the irregular matter had that tendency on the face of it, a new trial should be granted without further inquiry as to its actual effect. The test is not whether the irregular matter actually influenced the result, but whether it had the capacity of doing so. The stringency of this rule is grounded upon the necessity of keeping the administration of justice pure and free from all suspicion of corrupting practices."
"Misconduct" of a juror is descriptive of deportment, active or passive, which is repugnant to the ideal of the purity of justice.
The misconduct in the Panko case bred the suspicion that extraneous information acquired by the juror involved may have adversely affected his ability to decide the case on the merits and, indeed, may have caused him, wittingly or otherwise, to influence his fellow jurors to found a verdict upon improper considerations.
Misconduct as depicted in the Panko case is absent here.
In the present case we are presented with the possibility that two of the jurors may have mistakenly found against Miss Smolderen on the Cerf claim, having voted in her favor on her own claim. But there is no suggestion that they were motivated by any consideration other than their own conception of the evidence, and the law as defined by the court. They may have been lacking in perspicacity but their integrity is unimpugned. Moreover, any misunderstanding which they may have had obviously had no effect on the remaining jurors in the case in which accord was not achieved. I am satisfied that the doctrine of the Panko case has no application to the instant situation.
*227 Indeed, there is in my mind grave doubt of the soundness of the basic premise of the movant that inconsistent verdicts of individual jurors on the poll are the equivalent of inconsistent verdicts of the jury unit. It may be noted in passing that a similar situation appeared in Dahle v. Goodheer, 38 N.J. Super. 210 (App. Div. 1955). Factual recital contained in that opinion reveals that the jury found against one defendant on liability by a vote of 11 to 1, and then by unanimous vote assessed damages. While it is true that the effect of the supposed inconsistencies in the polls on the validity of the verdicts is not touched upon, the very fact that the situation was exposed by the court without comment gives rise to the inference that the lack of unanimity does not destroy verdicts so long as ten or more jurors subscribe to them.
The contention of Miss Smolderen that the verdicts were contrary to the weight of the evidence on the question of liability likewise is without foundation.
Briefly the factual claims of the three operators were these:
Gibb testified that he was proceeding northerly at a speed of 45-50 miles per hour in the easterly of two lines of heavy traffic, about 100 feet behind the car ahead. He said that as he approached the East Brunswick Circle the line slowed down and that as he saw the lights of cars ahead turn red he did likewise, at the same time pulling his vehicle on the shoulder of the road. As he came to a halt he heard the screeching of brakes from the rear, and looking in his rear view mirror, he observed a car which he later identified as Cerf's, swerve from the fast lane at a high rate of speed toward his rear, following which there was a violent impact. He said also that as he looked in the mirror he saw another car in the slow lane about 125 feet distant.
Miss Smolderen's version was that she had been driving in the slow lane at a speed "under 60 miles per hour" for at least five or ten minutes before she became aware of a dark *228 obstacle 15 or 20 car lengths ahead. She applied her brakes and remembers nothing more of events preceding the occurrence.
Cerf testified that he was traveling in the westerly or fast lane at a speed of approximately 60 miles per hour. He remembered passing some slower moving vehicles and seeing a "dark object" ahead. Then there was a "flash of light." He remembered nothing more.
If the jury had been left with these versions of the happening foreshortened by the amnesia of Miss Smolderen and Cerf and attended by the uncertainties inherent in the necessarily limited opportunities of Gibb to see through his mirror to the rear the manner of operation of the Cerf and Smolderen cars in the last crucial moments before this violent collision, rational factual findings would have been difficult of attainment.
But two witnesses, Lt. and Mrs. Richard Morse, gave testimony which squarely placed the responsibility for the accident upon Mr. Cerf and Miss Smolderen and exonerated Gibb.
Both said that they were passengers of a vehicle traveling behind Gibb's tractor-trailer in the slow lane. They said that the line of cars ahead slowed down and that as their driver did likewise the Cerf car passed them at a high rate of speed on their left and swerved in front of them. It was followed immediately by the Smolderen car which also swerved into their path, the two vehicles so shortening the space between their car and the Gibb vehicle that they felt a sudden apprehension of danger to themselves. The crash followed immediately. The manner and demeanor and acuity of Lt. and Mrs. Morse could not have failed to inspire great confidence in the jury and the verdicts reflecting findings of negligence on the part of Mr. Cerf and Miss Smolderen and exoneration of Gibb were entirely in accord with their testimony.
The substantial proof offered by these witnesses not only disposes of Miss Smolderen's contention that the rejection of her claim was contrary to the weight of the evidence, but it serves also to so remove from doubt the question of legal responsibility as to require that the new trial to which Mrs. *229 Cerf is entitled by reason of the inadequacy of damages be limited to the issue of damages only. Compare Dahle v. Goodheer, supra.
There remains for determination the Smolderen contention that the verdict in favor of Mrs. Cerf was arrived at by the quotient process and that this illegal approach to the determination of the issues raised by that claim amounts to misconduct by the jury which taints all facets of its determinations with illegality. This branch of the motion is supported by an affidavit of a juror, Theodore R. Jackson, in which it appears that the jury, having determined that Mrs. Cerf was entitled to a verdict, agreed to abide by the division by 12 of the sum of the 12 individually suggested awards. Thereupon each submitted a sum, the figures ranging from a minimum of $100 to a maximum of $3,000, and in accordance with the plan the divisional quotient of the total resulted in the award of $1,350.
The impropriety of this method of assessing damages is well established. See Pushcart v. New York Ship-building Co., 85 N.J.L. 525 (Sup. Ct. 1914); Kennedy v. Kennedy, 18 N.J.L. 450 (Sup. Ct. 1842). In circumstances where it reflects an indiscriminate mixing of individual convictions concerning non-liability and liability with the issue of damages the resulting concoction is necessarily so poisonous to justice as to require voiding of the verdict. But granting full credit to Mr. Jackson's ex parte affidavit and assuming that it would be supported by the depositions of all of the jury personnel, it is entirely clear that the interdicted process was utilized only to determine the amount of the Marietta Cerf verdict, all jurors agreeing that she was entitled to damages in some amount. Obviously non-liability of Miss Smolderen was not an ingredient in a mixture of thinking, else the jury could not have rejected her own claim. Thus, she suffered no prejudice by reason of the result, Mrs. Cerf alone being prejudiced in the circumstances.
It is therefore my view that the illegality charged affected only the issue of damages in the Marietta Cerf case, and since the verdict therein is admittedly inadequate this finding *230 affords only an additional reason for granting to her a new trial on the issue of her damages.
I am mindful that this summary disposition of the contention that a quotient verdict rendered in one of a number of consolidated cases invalidates all verdicts may leave the movant, Smolderen, with an insufficient record for the purposes of review.
Therefore, in the order denying the Smolderen motion for a new trial there may be included a provision that she may take such depositions as she may deem proper to support the ex parte showing of a quotient verdict, same to be taken on notice to all parties within the time granted for appeal and to be treated by the litigants as having been before this court on this motion.
An order granting a new trial to Marietta Cerf on the issue of damages only may also be presented.
Approval of all parties as to the form of the orders will be endorsed thereon.
No costs.