SCHIRO and another, Appellants, v. ORIENTAL REALTY
COMPANY, Respondent.

*June 1—June 26, 1959.*

For the appellants there was a brief by *William G. Cavanaugh, Jr.,* and *Arlo McKinnon,* both of Milwaukee, and oral argument by *Mr. Cavanaugh.*

For the respondent there was a brief by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Norman C. Skogstad* and *Howard T. Foulkes* of counsel, all of Milwaukee, and oral argument by *Norman C. Skogstad.*

CURRIE, J. The plaintiffs seek to obtain a new trial because of alleged errors committed by the trial court. The claimed errors relate to questions 10 and 11 of the special verdict. By its answers to question 10, the jury attributed 50 per cent of the total aggregate negligence of Mrs. Schiro and the defendant to each. Question 11 was answered adversely to the plaintiffs inasmuch as the jury found that it would have been practicable for the plaintiffs, by a reasonable expenditure, to have filled in soil so as to have leveled the ground where the plaintiff claimed she lost her balance and fell. Thus, by such answer the jury determined that the plaintiffs had failed to take proper steps to minimize their damages.

The plaintiffs raise the following contentions with respect to the jury's apportionment of negligence between the defendant and Mrs. Schiro:

(1) This was a case of intentional nuisance to which contributory negligence is not a defense.

(2) The jury rendered an invalid quotient verdict with respect to the issue of comparative negligence.

(3) The trial court erroneously refused to include a proper requested instruction in the charge to the jury.

*Availability of Defense of Contributory Negligence.*

The plaintiffs ground their contention, that the defendant was guilty of an intentional nuisance, upon the fact that in

1941 Mr. Schiro lodged a complaint with the defendant concerning the bad condition of the wall and the defendant had thereafter taken no steps to remedy the situation. The authorities cited by the plaintiffs in support of their position involve situations where the perpetrator of the nuisance had continued some affirmative activity after notice that it is harming another's property.[1] Here the defendant did not engage in any affirmative conduct with respect to the maintenance of the wall after the making of the complaint to it in 1941. Furthermore, even in some instances of intentional nuisance, contributory negligence may still be a defense. This is pointed out by Prosser, Law of Torts (2d ed.), p. 424, sec. 74, as follows:

"In the second place, even if the nuisance is a matter of intent, or of some abnormal activity, the kind of contributory negligence which consists of voluntarily encountering a known danger, and usually is called assumption of risk, may still be a defense. The plaintiff is not free to run recklessly into a known obstruction in the street, skate on a pond from which he knows the ice has been cut, or walk into the midst of visible dynamiting operations, and still hold the defendant responsible for his damages. In such cases there is a consent to take the risk, or such an element of wilful misconduct on the part of the plaintiff that he is barred from recovery in nuisance as in the case of any other tort."

The act of Mrs. Schiro in stepping so close to defendant's wall and onto an obvious declivity that provided insecure footing is the sort of conduct which should constitute a defense in the instant type of nuisance action. As appears from the above quotation from Prosser, some courts would classify Mrs. Schiro's conduct as assumption of risk. How-

---

[1] The authorities cited by the plaintiffs on this point are Restatement, 4 Torts, pp. 238 *et seq.*, sec. 825, and Prosser, Law of Torts (2d ed.), pp. 392, 394, sec. 70.

ever, this court considers it to be contributory negligence because of the absence of any consensual relationship between the parties. *Schiro v. Oriental Realty Co.* (1956), 272 Wis. 537, 76 N. W. (2d) 355.

Furthermore, on the first appeal this court held that the question of contributory negligence should have been submitted to the jury at the first trial. The evidence at the second trial was substantially the same as at the first trial with respect to the conditions and circumstances which brought about the accident. Therefore, our holding on the first appeal, that contributory negligence was an available defense, would ordinarily be conclusive upon the plaintiffs on this appeal as the law of the case. *Langer v. Stegerwald Lumber Co.* (1952), 262 Wis. 383, 385, 55 N. W. (2d) 389, 56 N. W. (2d) 512, 36 A. L. R. (2d) 679.

## Quotient Verdict.

As appears from the copy of the verdict appearing in the statement of facts preceding this opinion, the jury in answering the two parts of question 10 (the comparative-negligence question) at first set forth the percentages arrived at by the individual jurors. Then such answers were stricken out and "50%" inserted as the answer to each of the two subdivisions of the question. For example, the stricken answer as to subdivision (a) relating to the defendant's negligence was: "6–60%, 3–50%, 2–40%, 1–10%." Because the average of such separate answers is 50 per cent, the plaintiffs contend that the jury arrived at its ultimate answers to the two subdivisions of question 10 by adding the percentage answer of each juror and dividing by 12.

The explanation of the reason why the original answers to the two subdivisions of question 10 were stricken is supplied by the record. After the jury had deliberated for some time, it returned to the courtroom and requested further in-

structions with respect to the method to be employed by it in answering the two subdivisions of question 10. The foreman specifically inquired as to whether one percentage figure was to be inserted as the answer to each subdivision or whether different percentage figures were to be set forth as separately determined by each juror. The learned trial court then properly instructed the jury that the jury's answers should consist of two percentage figures which when combined would equal 100 per cent.

An annotation on the subject of quotient verdicts is to be found in 52 A. L. R. 41. Such annotation defines a quotient verdict as follows:

"A quotient verdict may be defined generally as a verdict resulting from an agreement whereby each juror writes down the amount of damages to which he thinks the party is entitled, and these several amounts are added together and divided by the number of jurors, the quotient thereby obtained being accepted as the amount of the verdict."

A verdict is not rendered bad merely because it is arrived at by the quotient method. The annotation in 52 A. L. R. deduces the following rule from the decided cases (p. 44):

"It is equally well settled that, although jurors divide the aggregate of their several estimates by 12, and return the quotient as their verdict, it will not be held to be legally objectionable if, after the amount has been ascertained, the respective jurors deliberately assent to and accept the amount so obtained as, in their opinion, a just verdict, and so return it."

Apparently the only Wisconsin cases dealing with the validity of quotient verdicts are the early cases of *Fowler v. Colton* (1843), 1 Pin. 331, and *Birchard v. Booth* (1855), 4 Wis. *67.

In *Fowler v. Colton, supra,* the jury returned a verdict for damages in favor of the plaintiff in the sum of $375. In support of a motion for a new trial, counsel for the defendant offered to prove by affidavit that the jury reached such result by having each juror mark down the sum he would allow as damages, and then adding the total of such sums and dividing by 12. The trial court refused to receive such evidence, overruled the motion for a new trial, and granted judgment for the plaintiff. Upon writ of error, the territorial supreme court affirmed. It was held that, even if the offered evidence had been competent, the facts attempted to be proved did not establish error. The rationale of the court's holding is apparent from the following quotation from its opinion (p. 339) :

"There is no averment that the jury previously bound themselves to adhere to the result; but it is stated merely, that they did put down the amount each would allow, and did ascertain the quotient, which they agreed upon as their verdict. After the members of the jury argue the question, and agree to find for the plaintiff, in torts and other cases where there is no ascertained demand, it can seldom happen that they can or will agree at once upon a precise sum to be given in damages. There will necessarily arise a variety of opinions, and mutual concessions must be expected. A middle sum may in many cases be a good rule; and though it is impossible but this mode may be sometimes abused by a designing juryman fixing upon an extravagantly high or a very low sum, yet unless such abuse appears, the fraudulent design will not be presumed. It is immaterial whether they come to the result upon paper, or in the course of conversation, so that they agree, after the result is ascertained, to make that result their verdict."

The facts in *Birchard v. Booth, supra,* are substantially similar to those in *Fowler v. Colton, supra.* The fact that

the jury had used the quotient method of arriving at the damages found was proved by the affidavit of the officer who had charge of the jury during its deliberations. From such affidavit it appeared that the quotient method was first employed by the jury as an experiment and thereafter the result was adopted by the jury as its verdict. The trial court upheld the verdict and the defendant raised the issue of the invalidity of the verdict before the supreme court by writ of error. The supreme court affirmed and held that the evidence disclosed that the jury had fully deliberated upon, agreed, and assented to the sum found in the verdict.

The plaintiffs particularly complain about the fact that it is apparent from the crossed-out answers the 50 per cent figure in the instant case, which appears in the jury's answers to question 10, was due to averaging in the individual figure of one juror who attributed only 10 per cent of the total negligence to the defendant and apportioned the other 90 per cent to Mrs. Schiro. However, in order to invalidate the verdict there would have to be proof that the jurors bound themselves to the quotient method of answering the two subdivisions of the comparative-negligence question before each juror communicated his figure of the percentage to be used in arriving at such result. There is not only no proof that this was done, but the reasonable inferences to be drawn from the known facts are all to the contrary. One of such inferences is that the quotient method was not determined upon until after the jury had returned to the jury room following the receipt of the special requested instructions with respect to question 10, by which time the individual percentage figures fixed by each juror were already known. A second inference is that it is unlikely that there could have been an advance agreement to accept the results of the quotient method as the jury's final determination because, after it was employed, one of the jurors dissented.

We, therefore, conclude that there has been no showing made of any impropriety in the method by which the jury arrived at its answers to the two subdivisions of question 10.

The issue of an improper quotient verdict is one that is likely to occur with extreme rarity in this jurisdiction. This is because jurors are required to deliberate in secret, and are not permitted to impeach their own verdict by disclosing the methods employed in reaching the same.

*Refusal of Requested Instruction.*

The plaintiffs requested an instruction to the effect that the jury, in passing on the question of Mrs. Schiro's contributory negligence, could take into consideration her twenty-four years' use of the strip of lawn between the board sidewalk and the retaining wall to hang up her wash without mishap or injury. An assignment of error is predicated upon the trial court's refusal of such requested instruction.

We are satisfied that the trial court properly refused to give such requested instruction. 2 Harper and James, Law of Torts, p. 980, sec. 17.3, states:

"An actor will not be allowed to show conformity with his own individual habits in order to prove due care."

To the same effect is Prosser, Law of Torts (2d ed.), p. 137, sec. 32:

"The actor's own past conduct is no evidence of his reasonable care, . . ."

The brief of the plaintiffs cites the following three cases in support of their contention that it was error to refuse such requested instruction: *Connally v. Woods* (1913), 39 Okla. 186, 134 Pac. 869; *Neeley v. Mapleton* (1908), 139 Iowa 582, 117 N. W. 981; and *Beach v. Des Moines* (1947), 238 Iowa 312, 26 N. W. (2d) 81. None of

these three cases deals with the subject of proper instructions in negligence or nuisance cases, but the problem therein considered was whether the plaintiff in each case was contributorily negligent as a matter of law. However, all do contain statements that tend to support the plaintiff's position that, in passing on Mrs. Schiro's possible contributory negligence, it was proper for the jury to consider the fact that she had used the strip of land between the board sidewalk and wall for hanging up her wash for twenty-four years without experiencing an accident until her fall on September 9, 1952.

In *Connally v. Woods, supra,* the plaintiff was injured by falling over an embankment caused by the defendant landowners excavating to within a few inches of the boundary line of the adjoining property. This left a narrow strip of land between the house in which the plaintiff resided and such embankment across which the plaintiff had been accustomed to walk before as well as after the excavation. The excavating had taken place in October and November and the accident happened the ensuing December 4th. The statement in the opinion of the Oklahoma court relied upon by the instant plaintiffs is as follows (39 Okla. 190, 134 Pac. 871):

"If the plaintiff was, as she says, merely passing around her house for the purpose of reaching the street, she cannot be charged with contributory negligence, as a matter of law, because she happened to step too near the edge of the embankment. The force of habit is strong, and it cannot be said that a person is guilty of negligence by falling or dropping back into habits that they have had for a long period of time. In this case the plaintiff had for months been accustomed to use the way without being exact to the inch as to where she must step. It was only natural that she would, through force of habit, drop into the old custom and step too near the brink."

The two cited Iowa cases present situations in which plaintiffs had passed over a defective sidewalk in safety many times before finally incurring a fall as a result of the defect. The Iowa court held that the plaintiffs in such two cases were not contributorily negligent as a matter of law because of the fact that such plaintiffs many times had passed in safety over the defective walk, and believed they could do so again on the occasions when the falls resulted.

We do not consider it to be good law to hold that a person, who falls because of walking in an unsafe place, is negligent if he falls the first time or two he attempts it, but may not be negligent if the fall does not occur until the fiftieth or hundredth attempt to walk over the danger spot. We, therefore, decline to adopt such a principle into the law of this state.

### *Other Issues.*

With respect to question 11 of the verdict, the plaintiffs claim that the trial court unduly restricted the cross-examination of one of defendant's witnesses and erroneously refused to give a proper requested instruction to the jury. We find it unnecessary to pass upon such alleged errors because of our conclusion that the answers to question 10 must be permitted to stand. Such findings with respect to comparative negligence bar the plaintiffs from recovery irrespective of whether any error was committed that might have affected the jury's answer to question 11.

*By the Court.*—Judgment affirmed.

MARTIN, C. J., took no part.