WALSH, Respondent, v. WILD MASONRY COMPANY, INC., Appellant.*

*No. 689 (1974). Submitted on briefs April 12, 1976.— Decided May 4, 1976.*
(Also reported in 241 N. W. 2d 416.)

* Motion for rehearing denied, with costs, on June 30, 1976.

448

For the appellant the cause was submitted on the brief of *Aberg, Bell, Blake & Metzner, S. C.* of Madison.

For the respondent the cause was submitted on the brief of *Robert R. Studt* and *Jenswold, Studt, Hanson, Clark & Kaufmann* of Madison.

For the appellant there was a brief filed by *Ward F. Richter* and *Bell, Blake & Metzner, S. C.* all of Madison.

For the respondent there was a brief filed by *Robert R. Studt* and *Jenswold, Studt, Hanson, Clark & Kaufmann* all of Madison.

HEFFERNAN, J.   The plaintiff, Edward Walsh, Jr., was injured while working at a construction site which was under the general control and supervision of Wild Masonry Company, Inc.  The injury occurred when Walsh stepped onto a hoist that was used to lift bricks to the level of the building that was under construction.  The frayed cable supporting the hoist snapped, and Walsh plummeted to the ground with the load of bricks.  He sustained severe injuries.

The trial judge sustained the jury's verdict that found Wild Masonry 60 percent negligent and Walsh 40 percent negligent.  Damages were awarded to Walsh in the amount of $50,243.61, which were reduced, as the result of the comparison of negligence, to the judgment award of $30,146.17.  Wild Masonry Company, Inc., appeals from the judgment.

We conclude that the trial judge erroneously instructed the jury that the workman's duty of care for his own safety was minimized as the result of a momentary diversion of attention or preoccupation.  The record is devoid of any evidence showing that Walsh's attention was diverted or that he was so preoccupied as to overlook a hazard.  This instruction was erroneous and prejudicial. We reverse.

The record reveals that Wild Masonry was employed as a subcontractor in the construction of a shopping center in Madison, Wisconsin.  Walsh was a laborer employed by the general contractor, but he was assigned to work with Wild Masonry as a laborer.  His duties at the time of the accident included the operation of a hoist,

which was used to lift bricks to the position where they could be used by the masons. The hoist, which belonged to Fass Brothers, had not been used for a period of approximately three years. During that time, it was kept in Fass' outdoor storage yard, and only the motor part of the hoist was protected from the elements. The hoist platform was lifted by a pencil-thin cable consisting of three intertwined woven steel strands.

Walsh's job was to load bricks and mortar onto the hoist platform by the use of a forklift, and he then operated the hoist to raise those materials to a higher building level. The hoist was operated by the use of controls that were located beside the lift on the ground level. Riding on the hoist was prohibited by the rules of the Department of Industry, Labor and Human Relations.

On the day of the accident, May 6, 1971, Walsh noticed that the cable had become frayed and that a strand of the cable was severed. He reported this to Erickson, the labor foreman for Wild Masonry, and to Faust, the mason foreman for Wild Masonry. Erickson examined the cable, relayed the information to the office of Wild Masonry, and was told that the cable would be repaired by the next morning. Erickson was not told, however, that the machine should be shut down, nor did he tell Walsh that he should cease operation of the hoist, although at trial he acknowledged that he should have done so.

Walsh was an experienced machine operator, and he knew the hazards of operating the hoist with a weakened cable. He also knew that, under the union rules, he had the right to shut down the machine if he considered it unsafe.

During the course of the day's work, the cable snapped, dropping the hoist, its load of bricks, and Walsh some 30 feet. It is clear that Walsh was on the lift at the time of the accident, but how he got there is disputed. Walsh

testified that he sent the hoist to the level where the masons were working, and when no one appeared to unload the bricks, he climbed a nearby ladder; and when he found no one there to unload the hoist, he stepped on the platform, with the intention of unwiring the bricks. He testified that the hoist fell just as he stepped onto it.

There was no testimony to show that, on this occasion, Walsh had ridden the hoist up to the higher level, and there is no evidence to show that he had ever done so. Erickson, the labor foreman, testified, however, that, just before the accident, he looked down the hoist shaft and saw the bricks loaded on the hoist but did not see Walsh. He testified that he then went down a ladder to see if he could locate Walsh. The ladder that Erickson claims he descended was the same ladder which Walsh claims to have climbed to get to the upper level. Just as Erickson started down the ladder, he heard the hoist mechanism start up. He heard the hoist crash to the ground before he reached the bottom of the ladder.

The evidence is in direct conflict, but as the trial judge stated, apparently the jury chose to believe Walsh and not Erickson. There was, on the other hand, testimony that, while in the hospital shortly after the accident, Walsh, without stating that he had been riding on the hoist at the time of the accident, said to a former employer that it could be used to ride to an upper level.

The hoist fell because of the break in the cable. An automatic braking mechanism failed because of the shearing of a bolt during the fall.

The jury found no negligence on Fass Brothers, the owner of the hoist, and apportioned 40 percent of the negligence to Walsh and 60 percent to Wild Masonry.

All of the appropriate motions after verdict were made by the defendant, and any errors alleged are preserved on appeal. There is no appeal from that portion of the verdict and judgment which dismissed the complaint

against Fass Brothers. That judgment is not questioned on appeal.

While the defendant on appeal cites numerous errors, we find only one meritorious and controlling. That error compels the reversal of the judgment and a remand for a new trial.

An instruction which we find erroneous and prejudicial to Wild Masonry was requested by counsel for Walsh and given by the trial judge. The essence of that instruction is contained in Wis J I—Civil, Part I, 1051. Such instruction is appropriate under facts which indicate that a workman was diverted in his attention or was preoccupied to the extent that he could not be expected to use a usual degree of care for his own protection. The instruction, as finally given by the trial judge, was:

"You are further instructed that momentary diversion of attention or preoccupation of a workman in the discharge of his duties minimizes the degree of care required of him in the absence of such diversion or preoccupation."

At the time this instruction was first requested, the trial judge properly refused that instruction, stating:

"It's only a lesser degree of care when you were diverted, and there is no indication here he was diverted. . . . I am going to use the standard of an ordinary workman under the facts and circumstances of this case. . . . Where there is an indication or testimony he was preoccupied, then it is; but there is no testimony here he was pre-occupied . . . he didn't testify he had so many things on his mind he didn't know what he was doing."

After a short recess, the trial judge, without explanation, stated that he would give the requested instruction. He also, at that time, stated that he would also instruct the jury to the effect that the degree of care or diligence which a workman should exercise for his own safety varies with the circumstances. That additional instruction, which was given to the jury, recites:

"While the rule that a workman must exercise ordinary care for his own safety never changes, the degree of care or diligence which a workman must exercise to come up to the standard of ordinary care varies with the circumstances naturally calculated to affect or increase the hazard of an accident or injury. The greater the danger which is or may be apparent to an ordinarily prudent workman under the circumstances existing, the greater must be the degree of care which must be used to guard against such danger."

This instruction was also objected to. The trial judge apparently felt, however, that this latter instruction sufficiently ameliorated or explained the effect of the diversion instruction, that possible prejudice under the diversion instruction would be avoided, because it called to the jury's attention that the degree of care which a workman must exercise depends upon the circumstances. While that is undoubtedly true, it constitutes mere surplusage, because it does not undo the prejudicial effect of instructing a jury in respect to evidence that is not made a matter of record. As we said in *Carlson v. Drews of Hales Corners, Inc.* (1970), 48 Wis. 2d 408, 414, 180 N. W. 2d 546, "The instruction must be germane to the situation at hand and must be framed in light of the evidentiary issues."

While the rationale of the instruction is appropriate where there is some evidence of a workman's preoccupation or diversion, it is inappropriate in circumstances where that evidence is not to be found. The rationale of the diversion in situations under a proper state of the evidence was well stated in *Knutter v. Bakalarski* (1971), 52 Wis. 2d 751, 756, 757, 191 N. W. 2d 235 :

"The reasoning supporting the rule applicable to workmen is grounded on public policy and recognizes that because a workman who is necessarily in the location of hazard, and necessarily must be absorbed in his work if it is to be efficiently performed has only a limited ability to watch out for the hazards, and a momentary

preoccupation is not negligence if ordinarily prudent workmen under such conditions would have acted similarly."

That rationale is, however, not applicable here. There is no evidence of, or claim of, preoccupation or momentary diversion of attention. The hazard in this case was the frayed and partially severed cable. Walsh knew that condition at least by noon of the day of the accident, and he was aware of its condition when later he stepped out onto the hoist platform. He testified that he knew he was on the platform with one strand of the cable broken. Walsh testified that he stepped onto the platform with the full knowledge of the cable's condition. While Walsh's conduct in so doing could clearly result in the jury finding him negligent—and it apparently did—the special instruction relating to diversion of attention or preoccupation was not justified under the state of the evidence.

Those cases in which the court has approved of the diversion-of-attention instruction are those in which the immediate hazard was unknown to one who was preoccupied in his work.[1] Only in those cases where the party is unaware of a particular and immediate danger because of his preoccupation or diversion of attention is he exonerated from exercising the usual care in recognizing the danger and avoiding it.

Basically, however, the problem with this case is evidentiary. Walsh admitted that he was aware of the hazard at the very instant that he exposed himself to it;

---

[1] *See, e.g., Bourassa v. Gateway Erectors, Inc.* (1972), 54 Wis. 2d 176, 194 N. W. 2d 602; *Young v. Anaconda American Brass Co.* (1969), 43 Wis. 2d 36, 168 N. W. 2d 112; *Criswell v. Seaman Body Corp.* (1940), 233 Wis. 606, 290 N. W. 177; *Sandeen v. Willow River Power Co.* (1934), 214 Wis. 166, 174, 175, 252 N. W. 706; *Neitzke v. Kraft-Phenix Dairies, Inc.* (1934), 214 Wis. 441, 253 N. W. 579; *Hodgson v. Wisconsin Gas & E. Co.* (1925), 188 Wis. 341, 343, 206 N. W. 191; *Murphy v. Herold Co.* (1909), 137 Wis. 609, 615, 119 N. W. 294; *Dorsey v. Phillips & Colby Construction Co.* (1877), 42 Wis. 583.

and, moreover, nothing untoward happened at that time which, by any stretch of the imagination, so diverted him that he should be relieved of avoiding the hazard of which he was fully aware. *See: Heldt v. Nicholson Mfg. Co.* ante, p. 110, 240 N. W. 2d 154; *Sampson v. Laskin,* (1975), 66 Wis. 2d 318, 327, 224 N. W. 2d 594; *Gunning v. King* (1946), 249 Wis. 176, 23 N. W. 2d 602.

In *Gunning, supra,* the court held, as we do here, that the trial court's instructions erroneously gave the plaintiff the benefit of the lessened duty of self-protection required of workmen so engaged in their work that they could not give heed to the hazards of their surroundings. *Gunning* pointed out that such an instruction is *ipso facto* prejudicial, as it stated therein at page 181:

"The instruction given by the court must have affected the jury's determination as to the *quantum* of the plaintiff's negligence and therefore was prejudicial."

The error of that instruction was in no way corrected by a subsequent instruction of the court that the workman's duty varied according to circumstances.

Here, the instructions had the effect of injecting into the jury's consideration a fact that was not in evidence. The effect of the instructions was to tell the jury that, although Walsh had the obligation to exercise the standard of care of an ordinarily prudent workman, if he were momentarily diverted or preoccupied that standard of care was minimized.

The instruction was prejudicial to Wild Masonry, because there was no claim of a diversion or preoccupation by Walsh and no evidence of either.

The reversal of the judgment on the grounds of erroneous instruction is dispositive of this appeal. However, because we remand the action for a new trial, additional errors relied upon by the defendant will be summarily treated.

The defendant wished to show that Walsh had a history of alcoholism and that his judgment was, therefore, impaired and that his past pattern of conduct suggested that he was probably intoxicated at the time of the accident. Evidence to that effect was properly excluded, for, as the trial judge pointed out, there was not a scintilla of evidence that the plaintiff had been drinking on the day of the accident. Moreover, there was clear evidence that Walsh was negligent, for he acknowledged his awareness of the hazard and his willingness to proceed despite the known hazard.

In light of the admitted negligence, whether or not Walsh suffered some alcoholic degenerative impairment of his judgment was irrelevant and had little probative value under the facts of this case. Possible prejudice far outweighed any limited probative value that the testimony might have. The judge properly excluded the evidence under the circumstances of this case.

The defendant has also objected to the form of the verdict. The record, however, reveals that the defendant did not submit a proposed verdict to the judge for approval, nor did it object to the form of the verdict as submitted by the plaintiff. Under these circumstances, it has waived any objection to the form of the verdict.

Additionally, our examination of the verdict convinces us that the issues were properly framed therein and that the trial judge did not abuse his discretion in that respect. The verdict constituted a fair and unbiased submission of the questions of fault chargeable to the parties.

Error has also been charged because there was reference to an insurer of the defendant at the time the trial judge read the caption of the case. We find that that error was immediately corrected by the court's proper admonitions to the jury. Moreover, no objection was made to the court's statement until after a verdict was returned. The defendant, therefore, chose to proceed on

the theory that, even though there was possible prejudice, it would nonetheless secure a favorable jury verdict. We doubt that the trial judge's comments were prejudicial at all, when they were coupled with the prompt corrective admonitions to the jury. If the defendant had any misgivings in that respect, it was obligated to move for a mistrial as soon as the prejudice became apparent. *Kink v. Combs* (1965), 28 Wis. 2d 65, 72, 135 N. W. 2d 789. It cannot gamble on the trial's outcome and then be heard later to complain for the first time.

Other objections made by the defendant we consider to be without foundation in the record, and we are satisfied that the trial judge properly denied the defendant's motion for a directed verdict.

There was evidence to sustain the jury's verdict, and the motion for a directed verdict was properly refused. We reverse only because of the erroneous application of Wis J I—Civil, Part I, 1051 to the facts of this case.

*By the Court.*—Judgment reversed, and cause remanded for a new trial on all issues, with the exception of that portion of the judgment that dismissed Fass Brothers.