Ronald A. KELLER, Plaintiff
and Appellee,

v.

VERMEER MANUFACTURING
COMPANY, Defendant and
Appellant,

Tom Alme, Liberty Mutual Insurance
Company and White & White Inspection and Audit Service, Inc., Defendants.

Civ. No. 10590.

Supreme Court of North Dakota.

Dec. 19, 1984.

McIntee Law Firm, Towner, and Breidenbach, Swainston, Yokaitis & Crispo, Los Angeles, Cal., for plaintiff and appellee Ronald A. Keller; argued by Francis Breidenbach, Los Angeles, Cal. Appeareance by Michael S. McIntee, Towner.

Nilles, Hansen, Magill & Davies, Fargo, for Vermeer Manufacturing Company and Tom Alme; argued by W. Todd Haggart, Fargo.

McGee, Hankla, Backes & Wheeler, Minot, for defendant White & White Inspection and Audit Service, Inc.; argued by Richard H. McGee, Minot.

Faegre & Benson, Minneapolis, Minn., for defendant Liberty Mutual Insurance Company; argued by G. Alan Cunningham, Minneapolis, Minn.

SAND, Justice.

Vermeer Manufacturing Company has appealed from a judgment entered against it in favor of Ronald A. Keller and from an order denying Vermeer's objections to the allowance of Keller's costs and disbursements. This appeal raises issues with regard to a jury instruction on momentary forgetfulness of a known danger, evidentiary rulings, and costs and disbursements allowed to the prevailing party. We affirm.

This case arises out of the operation of a round baler. The type of baler involved is towed behind a tractor and operated by a power take-off from the tractor. Crop material to be baled is picked up by a rotating pickup comprised of several rows of steel tines. The pickup delivers the material to two in-running compression rollers which propel the material into the baling chamber, where it is formed into a cylindrical bale. A full-sized bale is five feet long, six feet in diameter, and weighs approximately 1,200 to 1,500 pounds.

From the time that Keller's father purchased the baler new in 1975, Keller was its principal operator and did most of the maintenance and service work on it. Keller was an experienced operator who had made approximately 5,000 bales with the baler prior to the accident.

On 19 September 1979, Keller was baling oat straw with a Vermeer Model 605C baler. After making one bale Keller saw a rock, got off the tractor, picked up the rock, and carried it to a rock pile. While returning to the tractor, Keller saw a dirt lump in the baler, almost touching the compression rollers. Without shutting off the tractor or disengaging the power take-off, Keller reached into the baler to dislodge the lump. He intended to propel the lump forward to the ground without touching the compression rollers. In the process, however, Keller's left arm was drawn between the rollers, resulting in an injury that ultimately resulted in a fore-quarter amputation of the left arm and shoulder.

Keller brought suit against Vermeer, the manufacturer of the baler; Tom Alme, the dealer who sold the baler to Keller's father; Liberty Mutual Insurance Company, which Keller alleged provided liability insurance and engineering safety consulting services to Vermeer and participated in the design, manufacture, labeling and distribution of warnings for Vermeer balers; and White & White Inspection and Audit Service, Inc., which Keller alleged provided engineering safety consulting services to Vermeer and participated in the design, manufacture, labeling and distribution of warnings for Vermeer balers.

Among others, Keller advanced four theories of liability: (1) that all of the defendants "negligently designed, manufactured, assembled, tested, inspected, distributed, labeled and provided instructions for the use of its Vermeer hay baler"; (2) strict liability against all defendants; (3) breach of an implied warranty of fitness for a particular purpose against Vermeer and Alme; and (4) breach of an implied warranty of merchantable quality against Vermeer and Alme.

Keller voluntarily dismissed his claims against Alme during trial. The jury by its special verdict found: (1) Vermeer was negligent in the design, testing, labeling, warnings or instructions for the baler; (2) the baler was not in a defective and unreasonably dangerous condition when it left the control of Vermeer; (3) Liberty Mutual was causally negligent; (4) White & White was not causally negligent; (5) Keller was contributorily negligent; (6) Keller's damages were $800,000.00; and (7) the percentages of fault proximately causing Keller's damages were as follows:

| | |
|---|---|
| Vermeer | 50% |
| Liberty Mutual | 13% |
| White & White | 0% |
| Keller | 37% |

The trial court ordered judgment for Keller against Vermeer for the sum of $504,-000.00 ($800,000 minus 37%), together with costs and disbursements. The trial court further ordered that Liberty Mutual and White & White have judgment dismissing Keller's action, with costs and disbursements in favor of White & White.[1] Judgment was entered accordingly. The trial court denied Vermeer's objections to Keller's costs and disbursements. Vermeer, which is the only party that has appealed, appealed from the judgment and from the order denying its objections to Keller's costs and disbursements.

Vermeer has raised the following issues in this appeal:

"1. Did the District Court commit reversible error in submitting Instruction No. 32 entitled 'Contributory Negligence—Forgetfulness of Known Danger?'

"2. Did the District Court abuse its discretion on certain evidentiary matters, resulting in the denial of a fair trial to Vermeer?

"3. Did the District Court err in allowing Plaintiff to recover as taxable costs the litigation expenses incurred by him in prosecuting the action and in failing to apportion the taxable costs according to the jury's allocation of negligence?"

## I.

### Momentary Forgetfulness

The trial court gave an instruction entitled "Contributory Negligence—Forgetfulness of Known Danger", as follows:

"Whether or not it is negligence for one to proceed into a dangerous situation of which he had previous knowledge is a question of fact. If you find that plaintiff voluntarily proceeded into a dangerous situation of which he had previous knowledge, but that he momentarily forgot the danger, such forgetfulness is not in itself contributory negligence unless under all the circumstances it shows a want of ordinary care not to have kept the danger in mind."

Vermeer contends that the trial court committed reversible error in submitting the instruction because: (1) the instruction is inappropriate in a case involving comparative negligence principles; (2) there is no evidence in the record that Keller momentarily forgot the danger posed by the baler rollers; and (3) the instruction misled the jury and was prejudicial to Vermeer. We do not believe the trial court erred.

Vermeer first asserts that momentary forgetfulness has no place in cases governed by the principles of comparative negligence, stating that "[w]ith the abandonment of contributory negligence, doctrines whose purpose was to ameliorate the harsh effects of contributory negligence are anachronistic and no longer justifiable from a policy standpoint" and "the momentary forgetfulness doctrine is a throwback to the contributory negligence era and no longer has a place in the law of North Dakota."

North Dakota has adopted a system of comparative negligence under which a plaintiff's contributory negligence no longer is a defense which bars recovery [See *Bartels v. City of Williston,* 276 N.W.2d 113 (N.D.1979); and *Wentz v. Deseth,* 221 N.W.2d 101 (N.D.1974)] "if such negligence was not as great as the negligence of the person against whom recovery is sought." Section 9–10–07, N.D.C.C. It is important to note that § 9–10–07, N.D.C.C., did not abolish the concept of contributory negligence. It only abolished the former result of contributory negligence—that a plaintiff's contributory negligence barred recovery of any damages—by providing

---

1. Relying on *Jack Frost, Inc. v. Engineered Building Components,* 304 N.W.2d 346 (Minn.1981), the trial court ordered judgment in favor of Keller against Vermeer in the amount of $504,-000.00 (which represented Vermeer's 50% and Liberty Mutual's 13%) and ordered that Liberty Mutual have judgment dismissing Keller's action. Because counsel for Vermeer conceded at oral argument that Vermeer was not raising any issue as to the addition to its liability of an amount representing Liberty Mutual's 13% negligence, we need not determine that issue.

that "any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person recovering." What constitutes contributory negligence has not been changed.

The doctrine of momentary forgetfulness has been a part of the law in North Dakota since at least 1906. In *Pyke v. City of Jamestown*, 15 N.D. 157, 107 N.W. 359 (1906), the plaintiff was injured when she stepped in a hole in a plank sidewalk. Although she had previously known of the defect in the sidewalk, she was not thinking of it at the time she fell. The City contended that the plaintiff was contributorily negligent as a matter of law. This Court stated, 15 N.D. at 169–170, 107 N.W. at 363:

"The question of negligence, whether it be of a defendant or the alleged contributory negligence of a plaintiff, is primarily and generally a question of fact for the jury.... The plaintiff was required to exercise such care as the condition of the street and her knowledge of it made reasonable under the circumstances.... [A]nd when he is injured as a consequence of a defect of which he had previous knowledge, the mere fact of previous knowledge does not per se establish contributory negligence. And this is also the rule when previous knowledge is coupled with absence of thought concerning the defect at the time of the injury, or momentary forgetfulness of it. Previous knowledge of a defect and forgetfulness of it are important facts to be considered in connection with all other circumstances in determining whether the party injured was exercising reasonable care. But it is not negligence, as a matter of law, for a person who has knowledge of a defect not to remember it at all times and under all circumstances...." [Citations omitted.]

*See also, Krause v. City of Wilton*, 40 N.D. 11, 168 N.W. 172 (1918); *Moeller v. City of Rugby*, 30 N.D. 438, 153 N.W. 290 (1915) (*Pyke, supra*, not applied when plaintiff remembered the defect at the time of the accident); and *Jackson v. City of Grand Forks*, 24 N.D. 601, 140 N.W. 718 (1913).

Vermeer has provided no citations to decisions holding that the doctrine of momentary forgetfulness is inapplicable in cases governed by comparative negligence, and we have found only one such decision, *Flynn v. City of New York*, 103 A.D.2d 98, 478 N.Y.S.2d 666 (1984), which was decided after Vermeer filed its brief. The court in *Flynn* stated, 478 N.Y.S.2d at 669:

"In our view, *Potaznick [v. City of New York*, 88 A.D.2d 566, 451 N.Y.S.2d 398 (1982)] illustrates the logical inconsistency of applying the doctrine of momentary forgetfulness of danger in the context of comparative negligence. The doctrine is a vestigial anachronism derived from a system of injury compensation which no longer is operative in this State. Its underpinnings have been eroded by the introduction of a system whereby legal responsibility for injury is apportioned on the basis of comparative fault. A plaintiff's negligence no longer constitutes an automatic bar to recovery, and the concept of 'contributory negligence' has been replaced by one of comparative 'culpable conduct' (CPLR 1411). Therefore, the reason for the momentary forgetfulness doctrine no longer exists and the question of whether a plaintiff's temporary forgetfulness constitutes contributory negligence is no longer germane. We hold, therefore, that it is error to apply the doctrine of momentary forgetfulness of a known danger in a comparative negligence case."

The court in *Flynn*, however, went on to state in the next paragraph that:

"Of course, we do not mean to suggest that a plaintiff's temporary lapse of memory is never relevant under a system of comparative negligence. In those cases where the trier of fact finds negligence on the part of a defendant, it may then consider whether a plaintiff's failure to have kept a known danger in mind constituted conduct falling below the standard of a reasonably prudent person. If the trier of fact concludes that plaintiff's conduct did fall below that stan-

dard, it may then apportion the liability accordingly. Thus, the factors which the doctrine of momentary forgetfulness took into consideration are now to be considered in determining the existence of 'culpable conduct' attributable to the plaintiff, within the meaning of the comparative negligence statute (CPLR 1411)."

We deem it of little moment whether we "apply the doctrine of momentary forgetfulness of a known danger in a comparative negligence case" or we consider "the factors which the doctrine of momentary forgetfulness took into consideration." In either case, a plaintiff's momentary forgetfulness of a known danger is something that the trier of fact may consider in connection with all of the other circumstances involved in determining whether or not the plaintiff and the defendant were exercising reasonable care under the circumstances, and, if not, in apportioning the negligence of the parties in allowing damages under our comparative negligence statute. The adoption of comparative negligence has not rendered a momentary forgetfulness instruction inapplicable in North Dakota.

■ Vermeer next asserts that, even if an instruction on momentary forgetfulness is appropriate in comparative negligence cases, it was error to so instruct in this case because there is no evidence in the record "to support Ronald Keller's present contention that he momentarily forgot the danger posed by the rollers." We disagree.

■ Aside from a question of whether or not knowledge that something is "an area of danger" is equivalent to knowledge or appreciation of the kind or amount of danger posed (which is not an issue we need to decide in this appeal), the following colloquy between counsel and Keller on direct examination clearly indicates that Keller was not thinking of the danger at the time of his injury:

"Q  You knew that this was an area of danger, did you not?

"A  Yes.

"Q  Well do you know what you were thinking of when you attempted to scoot that away? Were you thinking of the danger of that roller?

"A  No."

Absence of thought regarding a known danger is equivalent to momentary forgetfulness of it. *Pyke v. City of Jamestown, supra,* 15 N.D. at 169, 107 N.W. at 363, quoted above. Thus, testimony of an absence of thought warrants an instruction of the kind given, as does testimony of momentary forgetfulness.

Vermeer also asserts with regard to this issue that the instruction misled the jury and was prejudicial to Vermeer because there was no evidence to support it, the key question for the jury was the quantity of Keller's negligence, the split of negligence between Keller and Vermeer was very close, the instruction "tends unfairly to emphasize the excuse element and to reduce Keller's responsibility for his conduct", and the instruction conflicts with the ordinary negligence instruction given to the jury.

We have already determined that the evidence supported the giving of such an instruction. Although Vermeer has asserted that "[a]bsent the instruction, the jury would very likely have placed more negligence upon Keller", it has not demonstrated that the jury was misled. Vermeer has pointed to nothing in the record from which we can conclude that the jury was misled. The instruction is neutral in tone and effect and it does not conflict with the ordinary negligence instruction given.

Vermeer relies on *Walsh v. Wild Masonry Co., Inc.,* 72 Wis.2d 447, 241 N.W.2d 416 (1976), which it characterizes as presenting an "almost identical fact situation." The trial court had instructed the jury that "momentary diversion of attention or preoccupation of a workman in the discharge of his duties minimizes the degree of care required of him." Finding the instruction to be erroneous and prejudicial, the Supreme Court reversed. We find no identity in the factual situations presented. The trial court in the instant case did not instruct the jury that the degree of care

required of Keller was minimized. In *Walsh*, there was no evidence of any preoccupation or momentary diversion of attention to support the instruction. We have already determined that there was evidence to support the instruction given in the instant case.

Judges and jurors know that reasonable people sometimes forget things. Judges and jurors are not required to, and do not, leave their common sense outside the courtroom door. The reasonable man, whose conduct sets the standard of care for the parties involved in a negligence action, does not possess a perfect memory, is not perfectly attentive, and is not infallible. Thus, in appropriate cases, judges can instruct on forgetfulness or lack of thought and jurors can consider such things. This was an appropriate case.

For the reasons stated, we conclude that the trial court did not err in submitting the momentary forgetfulness instruction to the jury.

## II.

### Evidentiary Rulings

Vermeer asserts that the trial court abused its discretion in making six evidentiary rulings, resulting in the denial of a fair trial to Vermeer. We have reviewed the rulings in light of Rules 401 and 403, N.D.R.Ev. Rule 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The Explanatory Note to Rule 401 states, in part:

"The language is intended to reflect the realization that stringent legal standards cannot be meaningfully applied to govern determinations of relevancy and, consequently, that the area is one best left to the wide discretion of the trial court."

Rule 403 provides:

"Although relevant, evidence may be excluded if its probative value is substan-

tially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The Explanatory Note to Rule 403 states, in part, that "[t]he rule vests wide discretion in the trial court to control the introduction of evidence." We said in *State v. Olson*, 290 N.W.2d 664, 669 (N.D.1980):

"The question of balancing the probative value against the risk of unfair prejudice is one for the trial judge to resolve in the sound exercise of his discretion."

The foregoing material indicates the breadth of discretion afforded the trial court in ruling on evidentiary matters. We deem Vermeer's assertions in this regard to be without merit, and no useful purpose would be served by discussing them at length. Each of the rulings asserted to have erroneously admitted or excluded evidence was within the sound discretion of the trial court. We have considered Vermeer's assertions, the evidence admitted or excluded, the arguments of counsel at trial, the trial court's rulings, and we conclude that none of the rulings constituted an abuse of discretion.

## III.

### Costs and Disbursements

Vermeer contends that the district court erred in allowing Keller to recover $38,063.90 in costs and disbursements. Vermeer has objected to the allowance of reporter's fees for the depositions of specified individuals, copies of depositions of two experts, fees of expert witnesses not called at trial, fees of defense experts for their time in depositions taken by Keller, travel expenses for Keller's attorneys in taking depositions, and investigation expenses. The trial court allowed Keller his disbursements for the above items pursuant to § 28–26–06, N.D.C.C.[2] Keller was

---

2. Section 28–26–06, N.D.C.C., provides as fol-    lows:

also allowed costs pursuant to § 28–26–02, N.D.C.C.[3]

In ruling on Vermeer's objections to the allowance of the disbursements claimed by Keller, the trial court stated:

"The Defendant's objections appear to be without merit. While some of the evidence objected to was not actually introduced at trial, it appears it was intended for use at trial at the time it was procured, and therefore falls within section 28–26–06(2).

"The Court also finds the expert witness fees charged as disbursements to be reasonable, given the nature of the case, and further finds the number of Plaintiff's experts not[4] reasonable."

■ "The trial court may exercise its discretion as to the number of witnesses for which a prevailing party may tax costs." *United Development Corp. v. State Highway Department*, 133 N.W.2d 439, 444 (N.D.1965). The allowance of disbursements under § 28–26–06(2), N.D.C.C., is within the trial court's discretion. *Schwartz v. Ghaly*, 318 N.W.2d 294 (N.D.

1982). "The amount of fees to be paid to an expert must be left to the sound discretion of the trial court. Actual expenses, including travel expenses, also may be allowed if they are reasonable." *Peterson v. Hart*, 278 N.W.2d 133, 137 (N.D.1979). We said in *Buzzell v. Libi*, 340 N.W.2d 36, 42–43 (N.D.1983):

"The trial court, because it is involved in the action from its inception, is in a much better position to determine the reasonableness and necessity of the costs and disbursements sought by the prevailing party. It is thus for the trial court to make the initial determination of costs to be awarded, and its decision will be overturned on appeal only if an abuse of discretion is shown. *Moser v. Wilhelm*, 300 N.W.2d 840 (N.D.1980)."

No abuse of discretion has been shown.

Relying on *Bartels v. City of Williston*, 276 N.W.2d 113 (N.D.1979), Vermeer asserts that Keller's costs and disbursements should have been reduced by 37%, the percentage of negligence apportioned to Kel-

"*28–26–06. Disbursements taxed in judgment.* In all actions and special proceedings, the clerk must tax as a part of the judgment in favor of the prevailing party his necessary disbursements as follows:

"1. The legal fees of witnesses and of referees and other officers;

"2. The necessary expenses of taking depositions and of procuring evidence necessarily used or obtained for use on the trial;

"3. The legal fees for publication, when publication is made pursuant to law;

"4. The legal fees of the court reporter for a transcript of the testimony when such transcript is used on motion for a new trial or in preparing a statement of the case; and

"5. The fees of expert witnesses. Such fees shall be reasonable fees as determined by the court, plus his actual expense. The following shall nevertheless be in the sole discretion of the trial court:

a. The number of expert witnesses who shall be allowed fees or expenses;

b. The amount of fees to be paid such allowed expert witnesses, including an amount for time expended in preparation for trial; and

c. The amount of costs for actual expenses to be paid such allowed expert witnesses."

**3.** Section 28–26–02, N.D.C.C., provides as follows:

"*28–26–02. Amount of costs in specific cases.* Costs in the district courts and in the supreme court shall be as follows:

"1. To the plaintiff for all proceedings before trial, ten dollars, and for each additional defendant served with process not exceeding ten, one dollar;

"2. To the defendant, for all proceedings before trial, five dollars;

"3. For every trial of an issue of fact, five dollars;

"4. Superseded by N.D.R.App.P., Rule 38.

"5. To either party for every term not exceeding five, at which the cause is necessarily on the calendar of the district court and is not tried or is postponed by order of the court, three dollars, and for every term not exceeding five, excluding the term at which the cause is argued in the supreme court, five dollars. Term fees are not taxable as costs when a cause, properly on the calendar, is not reached for trial during the term, nor in case a continuance is had upon the application of, or stipulation with, the party in whose favor costs are to be taxed."

**4.** It is clear to us that the word "not" was erroneously inserted. If the trial court thought the number of experts was not reasonable, it would not have allowed all the disbursements sought by Keller.

ler. We disagree. The language relied on referred to the allocation of costs between defendants and released tort-feasors, not between plaintiffs and defendants.

Section 9–10–07, N.D.C.C., provides that in the case of a contributorily negligent plaintiff, "any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person recovering." It does not provide for any diminution in the costs and disbursements to be allowed to a recovering plaintiff. Keller won the lawsuit. The fact that the jury diminished the damages by 37% because of negligence attributable to him does not make Keller any less "the prevailing party" for purposes of application of § 28–26–06, N.D.C.C. *See Hyatt v. Sierra Boat Co.,* 79 Cal.App.3d 325, 145 Cal.Rptr. 47 (1978). The trial court did not err in refusing to reduce Keller's costs and disbursements by the 37% of negligence attributed to him.

For the reasons stated, the judgment and order are affirmed.

PER CURIAM.

The foregoing opinion was principally prepared by the Honorable Paul M. Sand, Justice, before his death. It is adopted by the undersigned as the opinion of this Court.

ERICKSTAD, C.J., and VANDE WALLE, PEDERSON, GIERKE, JJ., concur.

Justice PAUL M. SAND, who died on December 8, 1984, was a member of this Court at the time this case was submitted.