Raymond L. SUHAYSIK and Florence
Suhaysik, Plaintiffs-Appellants,

v.

MILWAUKEE CHEESE COMPANY and
Continental Casualty Company, Defendants-
Respondents.†

Court of Appeals

*No. 84–1452. Argued April 24, 1986.—Decided June 11,
1986.*

(Also reported in 392 N.W.2d 98.)

† Petition to review denied. HEFFERNAN, C.J., took no part.

290

292

For the plaintiffs-appellants, there were briefs and oral argument by *J. Ric Gass* of *Kasdorf, Dall, Lewis & Swietlik, S.C.* of Milwaukee.

For the defendants-respondents, there were briefs by *David M. Quale* and *Dorothy H. Dey* of *Prosser, Wiedabach & Quale, S.C.* of Milwaukee. Oral argument by *David M. Quale.*

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J. Raymond and Florence Suhaysik appeal from the judgment, entered upon a jury verdict, dismissing their personal injury action against Milwaukee Cheese Company. The jury found that Raymond Suhaysik's injuries were caused by both his own negligence and that of Milwaukee Cheese and attributed 53.33% of the negligence to Suhaysik. The Suhaysiks contend on appeal that the jury verdict was based on an impermissible quotient method, that an improper jury selection method rendered the verdict suspect, that insufficient evidence supported the verdict, that the trial court improperly refused to give requested jury instructions and that reversal in the interest of justice is warranted. We affirm on all grounds.

Raymond Suhaysik, an industrial insulator, was seriously injured in a fall from a ladder while insulating an overhead pipe in the chill roll room at Milwaukee Cheese Company on April 20, 1978. The chill roll is the machine which cools molten cheese and forms it into blocks or slices of different sizes. Suhaysik and his working partner, Brian Nawn, were sent to Milwaukee Cheese by their employer to do the insulating work in the early evening after the production shift had ended so that they would not be in the way. They arrived at about 5:00 p.m., during the clean-up shift.

The work required extension ladders to be set up against whatever supports were available in the room, reaching heights of between 18 and 24 feet. The ladders were supplied by the insulating company and were wooden with self-adjusting rubber feet.

At about 6:00, Nawn helped Suhaysik move his ladder to a new spot, adjacent to the chill roll machine, and then returned to his own work. The ladder rested against an overhead beam. Suhaysik had climbed the ladder to 17 or 18 feet when it slipped out from under him causing him to fall straight down and land on his feet, breaking both his heels.

No one witnessed the accident and there was no direct evidence of what caused the ladder to fall. At trial, Suhaysik elicited testimony about the possible presence of cheese particles on the floor which might have been trodden into a film or mixed with water, creating a greasy spot. Milwaukee Cheese countered with testimony that the floor was clean and dry and suggested that the ladder might have been improperly placed or used or in poor condition.

As noted above, the jury returned a verdict finding Suhaysik 53.33% negligent and Milwaukee Cheese 46.67% negligent. Under Wisconsin's comparative negligence law, Raymond Suhaysik was therefore not entitled to recover any of his substantial damages[1] from Milwaukee Cheese. *See* sec. 895.045, Stats. Florence Suhaysik's recovery for loss of consortium was also barred. *See White v. Lunder,* 66 Wis. 2d 563, 574, 225 N.W.2d 442, 449 (1975).

We first address Suhaysik's contention that the trial court erroneously refused to give two requested

---

[1] The jury calculated Raymond Suhaysik's damages as totaling $308,541.92.

jury instructions. Suhaysik requested both Wis J I—
Civil 1051, concerning the lesser degree of care re-
quired of a workman preoccupied with his work, and
Wis J I—Civil 1056, concerning camouflage. We will
address each in turn.

The trial court has discretion in instructing the
jury in order to fully inform it of the applicable rules
of law and to assist it in its analysis of the evidence.
*D.L. v. Huebner,* 110 Wis. 2d 581, 624, 329 N.W.2d 890,
909–10 (1983). In determining whether a proposed in-
struction should be given, the evidence is to be viewed
in the light most favorable to the party requesting it.
*Westfall v. Kottke,* 110 Wis. 2d 86, 102, 328 N.W.2d 481,
490 (1983). However, it is error to instruct on an issue
that the evidence does not support. *D.L.* at 624, 329
N.W.2d at 910.

The trial court refused to give the preoccupied
workman instruction for lack of foundation. The re-
quested instruction stated:

> Momentary diversion of attention or preoccupation
> of a workman in the performance of his work mini-
> mizes or reduces the degree of care that would oth-
> erwise be required of him; nevertheless, a workman
> has the duty to exercise the same degree of care for
> his own safety that an ordinarily prudent workman
> would exercise under such conditions when preoc-
> cupied with his work.

To justify the instruction, there must be evidence of a
particular and immediate hazard that was unknown
to one who was preoccupied with or momentarily di-
verted by his work. *See Walsh v. Wild Masonry Co.,* 72
Wis. 2d 447, 454, 241 N.W.2d 416, 419 (1976).

There was no evidence that Suhaysik failed to be aware of a particular and immediate hazard because of preoccupation with his work. To the contrary, Milwaukee Cheese maintained that the floor was clean and dry, while Suhaysik tried to show that a greasy spot on the floor must have existed which he did not see, not because he was preoccupied, but because it was invisible or nearly so.[2]

Suhaysik testified that he did in fact look at the floor before putting up the ladder, as he had at the other spots where he had put the ladder, "so I wouldn't sit on cheese or anything like that." Suhaysik did not testify that preoccupation with another aspect of the job interfered with his observation of the condition of the floor. There was no evidence of preoccupation or momentary diversion that prevented him from seeing a hazard that was actually present. The trial court properly refused to give the instruction.

We next address the camouflage instruction sought by Suhaysik. That instruction stated:

> Surfaces and their condition may so blend with their surroundings that a person exercising ordinary care as to lookout may not discover their condition until it is too late to avoid an accident because of such condition. You must determine whether the condition of this floor did so blend, that is, whether it so blended with its surroundings that

---

[2] On motions after verdict, Suhaysik's argument for the giving of the preoccupied workman instruction was grounded solely in the context of the scrutiny given to the place where the ladder was set up. Therefore, evidence concerning the condition of the floor is the relevant evidence for purposes of analyzing whether the instruction should have been given.

a proper lookout would not disclose its true condition.

Suhaysik wanted this instruction to bolster his theory that a virtually invisible greasy spot must have existed on the floor—a spot which he could not have seen but which Milwaukee Cheese should have known was there. The trial court ruled that there was insufficient evidence to support the instruction.

We affirm the trial court's refusal to give the instruction. The camouflage instruction is properly given when a party is accused of failure to see an object in plain sight if there is adequate testimony excusing the failure on the ground that the object blends with its surroundings. *Callan v. Peters Construction Co.,* 94 Wis. 2d 225, 236, 288 N.W.2d 146, 151 (Ct. App. 1979).

Counsel for Milwaukee Cheese asserted at oral argument before this court, and our independent review of the record confirms, that at trial Milwaukee Cheese did not attempt to show a failure by Suhaysik to see an object in plain sight. Milwaukee Cheese's consistent position at trial was that the floor was clean and dry. Some of Milwaukee Cheese's witnesses did claim that any cheese on the floor would have been visible because its light color would contrast strongly against the red floor. However, this testimony was offered to contradict Suhaysik's suggestion that a thin film of cheese on the floor might not have been readily visible, not to show that Suhaysik was negligent as to lookout. Because Milwaukee Cheese did not allege a failure to see an object in plain sight, there was no basis for the camouflage instruction as a defense to that allegation.

Suhaysik contended at oral argument that the jury instructions actually given so heavily stressed his

duty to recognize open and obvious dangers that he *was* in effect being accused of failure to maintain proper lookout. Our review of the record divulges no evidentiary basis for these instructions since Milwaukee Cheese presented no evidence that Suhaysik failed to see a hazardous condition on the floor and in fact argued that no such condition existed. The instructions were not warranted by the evidence. The record does not show, however, that Suhaysik ever objected to the instructions on lookout or to the balance of the instructions as a whole. Nor do we know how, or whether, the defense stressed those instructions to the jury, as Suhaysik did not provide this court with a transcript of the closing arguments. Thus, the issue was not adequately preserved. *Cf. Menge v. State Farm Mutual Automobile Insurance Co.,* 41 Wis. 2d 578, 585–86, 164 N.W.2d 495, 499 (1969) (an instruction not warranted by the facts was surplusage and thus a "misstatement of the law" to which objection, first raised at motions after verdict, was properly taken).

Finally, as to this issue, we observe that Suhaysik's intended use of the camouflage instruction was essentially offensive rather than defensive. It was Suhaysik, not Milwaukee Cheese, who claimed that he failed to see a hazardous condition. Such a claim is akin to a "trap" theory of liability. A trap arises when a licensor fails to disclose to a licensee a known but concealed danger. *Mariuzza v. Kenower,* 68 Wis. 2d 321, 328, 228 N.W.2d 702, 706 (1975).

We need not decide whether offensive use of the camouflage instruction is proper in a "trap" claim because we hold that Suhaysik did not establish a sufficient evidentiary basis for its use. His theory was

merely that the ladder slipped, he saw and did nothing to make it slip, and therefore a concealed slippery spot must have existed. Because he could present no direct evidence[3] that such a spot actually existed, he wished the jury to use the camouflage instruction in order to more easily conclude that the slippery spot could have been present but was undetectable to him. This is bootstrapping. There must be some evidence of an actually existing hazard before we can decide whether to allow any offensive use of the camouflage instruction.

Suhaysik next contends that there is no credible evidence to support the jury's finding that he was negligent at all. Alternatively, he claims that his contributory negligence could not have been greater than Milwaukee Cheese's negligence.

Where more than one reasonable inference may be drawn from the evidence, we must accept the inference drawn by the jury. *Fehring v. Republic Insurance Co.,* 118 Wis. 2d 299, 305–06, 347 N.W.2d 595, 598 (1984). One reasonable inference from the credible evidence was that Suhaysik, though aware of cheese particles elsewhere on the floor, did not check to see that the ladder was secure or take steps to properly secure it. We will not disturb the jury's finding as to Suhaysik's negligence.

Suhaysik's next complaint concerns the jury selection process. On the day of trial, an insufficient number of potential jurors was available to make up a jury if

---

[3] Suhaysik did introduce photographs of the accident site, taken a week later, which he claimed showed that greasy marks on the floor were visible from a catwalk although the floor appeared clean and dry from other angles.

all of the parties' peremptory challenges were exercised. The trial court apparently gave the parties the choice between a delay of the trial or accepting two peremptory challenges each. Both agreed to accept only two challenges.

Suhaysik asserts that this procedure denied him his statutory right to three challenges, *see* sec. 805.08(3), Stats., so that he had to accept a juror who had previous contact with defense counsel's law firm through his employment. The prejudicial effect of this result was magnified, Suhaysik claims, because the juror was chosen as foreman.

Suhaysik agreed to accept only two challenges in order to avoid a postponement of the trial. This was his choice; there is no evidence that he was coerced into doing so. We hold he has waived his objection to the procedure. However, we note that the juror in question was apparently candid about his slight contact with defense counsel's firm and expressed no predisposition to favor the defendant. We therefore fail to see that Suhaysik was prejudiced by the inclusion of the juror in question.

Suhaysik's next argument on appeal is that the jury's unusual apportionment of negligence evidences that it used an improper quotient method.

A quotient verdict is "a verdict resulting from an agreement whereby each juror writes down the amount of damages to which he thinks the party is entitled [or, in this case, the proportion of negligence he thinks is attributable to the party], and these several amounts are added together and divided by the number of jurors, the quotient thereby obtained being accepted as the amount of the verdict." *Schiro v. Oriental Realty Co.,* 7 Wis. 2d 556, 564, 97 N.W.2d 385, 389 (1959).

■

A verdict is not rendered bad merely because it is arrived at by the quotient method if, after the amount has been ascertained, the respective jurors deliberately assent to and accept the amount as a just verdict. *Id.* In order to invalidate the verdict, there must be proof that the jurors bound themselves to the quotient method before each juror communicated his figure of the percentage to be used in arriving at the quotient. *Id.* at 566, 97 N.W.2d at 390. Proof of such a course of events will be extremely rare, as jurors are required to deliberate in secret and are not allowed to impeach their own verdict by disclosing the methods employed in reaching it. *Id.* at 567, 97 N.W.2d at 390; *see also* sec. 906.06(2), Stats.

■

Suhaysik claims that the 53.33/46.67% negligence apportionment in this case is so unusual and suggestive that it can lead to no inference other than that the jury used a quotient method.[4] Since he has no other way to prove a quotient verdict, he argues, the fractionalized verdict in this case should entitle him to the presumption of a quotient verdict. He claims it is meaningless to say that quotient verdicts are invalid if they are surrounded by such protections that their validity cannot be challenged.

While we are not unsympathetic to this argument, we are unable to conclude that the negligence apportionment in this case is so suggestive of an invalid quo-

---

[4] At oral argument to this court, Suhaysik's counsel demonstrated that if eleven jurors thought Suhaysik to be 50% negligent and the twelfth thought him 90% negligent, use of the quotient method would result in an apportionment of 53.33%, precisely the percentage the jury did submit.

tient method that the verdict may be impeached. When considering an issue of verdict impeachment, the trial court must determine whether the evidence brought to the court's attention is (1) competent, (2) shows substantive grounds sufficient to overturn the verdict, and (3) shows resulting prejudice. *After Hour Welding, Inc. v. Laneil Management Co.,* 108 Wis. 2d 734, 738, 324 N.W.2d 686, 689 (1982). Even if the fractionalized verdict here was considered sufficient evidence that the jury used a quotient method, and we hold it is not, there is no evidence to show that the individual jurors failed to ratify the result after it was reached but instead bound themselves to it beforehand. Therefore, the trial court correctly concluded that the grounds asserted were insufficient under current Wisconsin law to allow the verdict to be overturned.

We agree with Suhaysik, however, that the rule regarding quotient verdicts becomes virtually meaningless as a practical matter since jury verdicts may rarely be impeached. Therefore, we recommend the implementation of a mandatory instruction to the effect that a jury is not to resolve internal disagreement by agreeing to bind itself to use of a quotient method to arrive at apportionment of negligence or computation of damages.

Finally, Suhaysik asserts that the verdict should be set aside and a new trial granted in the interest of justice, pursuant to sec. 805.15(1), Stats. He acknowledges that granting a new trial is a matter within the trial court's discretion but argues that the verdict is rendered so suspect by the combination of the various alleged errors discussed above, and the negligence apportionment is so close to the 50/50 split which would

allow him to recover for his severe injuries, that the trial court abused its discretion in denying Suhaysik's motion for a new trial on the issue of liability.

The trial court's ruling upon a motion for a new trial in the interest of justice is highly discretionary and will not be reversed on appeal in the absence of a clear showing of abuse of discretion or an erroneous application of law. *Herro v. Department of Natural Resources,* 67 Wis. 2d 407, 433, 227 N.W.2d 456, 472 (1975). The trial court here ruled that the case had been well and truly tried by competent counsel and that the record sustained the defendant's position and the jury's verdict. We perceive no abuse of discretion in the trial court's ruling.

*By the Court.*—Judgment affirmed.