Aaron BAIN and Angela Bain,
Plaintiffs-Appellants,

AMERICAN FAMILY INSURANCE GROUP, Plaintiff,

v.

TIELENS CONSTRUCTION, INC. and
General Casualty Co. of Wisconsin,
Defendants-Third-Party Plaintiffs-Respondents,

ALBERTS PLASTERING, INC., Defendant,

v.

PRIDE-ROCK, LLC and Heritage Mutual Insurance
Co. n/k/a Acuity Mutual Insurance Co.,
Third-Party Defendants.

Aaron BAIN and Angela Bain, Appellants,

AMERICAN FAMILY MUTUAL INSURANCE Co., Plaintiff,

v.

TIELENS CONSTRUCTION, INC. and
General Casualty Co. of Wisconsin,
Defendants-Third-Party Plaintiffs-Respondents,

ALBERTS PLASTERING, INC., Defendant,

v.

PRIDE-ROCK, LLC and Heritage Mutual Insurance
Co. n/k/a Acuity Mutual Insurance Co.,
Third-Party Defendants.

Court of Appeals

*No. 2005AP2433–FT. Submitted on briefs April 3, 2006.*
*—Decided May 16, 2006.*

**2006 WI App 127**

(Also reported in 718 N.W.2d 240.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Thomas O. Schultz* of *Schultz Law Office* of Green Bay.

On behalf of the defendants-third-party-plaintiffs-respondents, the cause was submitted on the brief of *Erik J. Pless* of *Everson, Whitney, Everson & Brehm, S.C.* of Green Bay.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J.[1] Aaron and Angela Bain appeal a summary judgment dismissing their complaint against Tielens Construction, Inc., and an order denying a motion for reconsideration. They assert it was error for the circuit court to hold Aaron Bain more

---

[1] This is an expedited appeal under Wis. Stat. Rule 809.17. All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

negligent as a matter of law than Tielens. We conclude the existence of factual questions precludes summary judgment. Accordingly, we reverse the judgment and order and remand for further proceedings.

## Background

¶ 2. Tielens was the general contractor for a new home being constructed in Dykesville. Tielens's crew had constructed the home's frame, including a stairwell, and, as was customary, installed a protective but temporary railing over the stairwell. As part of the project, Tielens subcontracted with Alberts Plastering, Inc., for plaster and drywall work. Alberts in turn subcontracted with Pride-Rock, LLC, for installation of the drywall. Pride-Rock removed the protective railing to install the drywall, but did not replace the railing when finished. Alberts left the railing down while it put up plaster and also did not replace it when finished. Tielens's crew was not on site while the subcontractors did their work, but sent an employee to inspect the site every two to three days.

¶ 3. Approximately fourteen days after the railing was removed,[2] Bain arrived as an employee of Lessuise Painting, Inc., to paint the interior of the home. Bain noticed the open stairwell and attempted to find materials on site to make his own railing but, finding none, nevertheless began painting. As he was painting, Bain would walk backward to stay out of the cloud of paint particles produced by his sprayer. While painting the ceiling, Bain stepped into the unprotected stairwell and fell, sustaining multiple injuries, some of which required surgery to repair.

---

[2] Pride-Rock's records indicated it began work on September 14, 2000. Bain was injured on September 28.

¶ 4. The Bains sued Tielens alleging negligence, a safe place statute violation, and other claims.[3] Tielens moved for summary judgment, alleging Bain was more negligent than Tielens as a matter of law. The circuit court agreed, noting that even though Bain knew there was no railing, he did not contact Tielens or Lesuisse to notify them of the safety concern but instead proceeded to paint. The court also stated that, at most, Tielens was negligent for failing to discover a subcontractor had removed the railing, but nothing in the record suggested Tielens was actually aware it had been removed. The Bains moved for reconsideration, arguing this was not one of those rare instances where a party's negligence could be determined as a matter of law. The court denied the motion.

## Discussion

¶ 5. We review summary judgments de novo, using the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). The methodology is well established and need not be repeated here. *See, e.g., Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶¶ 20–24, 241 Wis. 2d 804, 623 N.W.2d 751. We are a comparative negligence state. Contributory negligence does not bar re-

---

[3] Tielens and its insurer were the original defendants in the case initiated by the Bains in Brown County, case No. 2003CV1655. Brown County case No. 2003CV2208 was initially brought in Milwaukee County by American Family against Tielens and Alberts. That case was transferred to Brown County and consolidated with the Bains' case. Tielens eventually filed a third-party complaint against Pride-Rock to join that company as a defendant. Alberts and Pride-Rock have settled.

covery as long as the plaintiff's negligence is not greater than the defendant's negligence. *See* Wis. Stat. § 895.045(1).

¶ 6. "Summary judgment does not lend itself well to negligence questions." *State Bank of La Crosse v. Elsen*, 128 Wis. 2d 508, 517, 383 N.W.2d 916 (Ct. App. 1986). "Whether a person exercised ordinary care usually is not determinable by summary judgment." *Id.* "The concept of negligence is peculiarly elusive, and requires the trier of fact to pass upon the reasonableness of the conduct in light of all the circumstances, even where historical facts are concededly undisputed." *Alvarado v. Sersch*, 2003 WI 55, ¶ 29, 262 Wis. 2d 74, 662 N.W.2d 350 (quotation and citation omitted). Negligence is ordinarily not a decision for the court. *Id.*

### Bain's Actions

¶ 7. The court determined Bain was more negligent than Tielens as a matter of law for essentially two reasons. First, Bain had notice of the open stairwell. Second, despite this notice, he nonetheless proceeded with his painting.

¶ 8. When at work, the employee is there because of the direction of his or her employer. *McCrossen v. Nekoosa-Edwards Paper Co.*, 59 Wis. 2d 245, 255, 208 N.W.2d 148 (1973). The mere act of continuing with work, even though the premises may be unsafe, is not, by itself, contributory negligence.[4] *See id.* That one is

---

[4] Rather, the court noted, in part, that "the reasonableness of the plaintiff's conduct . . . must be determined in the light of the utility of going to work at his [or her] usual place of

an employee at a place of employment is to be considered in the overall apportionment of negligence because it "may be more reasonable to assume certain risks in the employment situation than in other situations." *Id.* at 256 (citation omitted).

¶ 9. Indeed, the *McCrossen* court noted: "No case has been called to our attention, and we have found none, in which this court has approved a finding of contributory negligence merely because an employee continued to work on premises which he knew might be unsafe." *Id.* Nothing has been presented to us to suggest we should deviate from that observation.

■

¶ 10. Regarding Bain's knowledge of the open stairwell, the parties dispute the applicability of the preoccupied worker doctrine. Encapsulated in WIS JI— CIVIL 1051 (1995), this doctrine states:

> Momentary diversion of attention or preoccupation of a worker in the performance of work minimizes or reduces the degree of care that would otherwise be required of him or her; nevertheless, a worker has the duty to use the same degree of care for his or her safety that an ordinarily prudent worker would use under such conditions (when preoccupied with work) (when his or her attention was momentarily diverted by work).

This rule is grounded in public policy. It recognizes that a worker who is necessarily in the location of a hazard, and who necessarily must be absorbed in his or her work to efficiently perform the job, "has only a limited

employment and performing work in the usual manner even though there was a possibility that the premises might be unsafe." *McCrossen v. Nekoosa-Edwards Paper Co.*, 59 Wis. 2d 245, 256, 208 N.W.2d 148 (1973).

ability to watch out for the hazards, and a momentary preoccupation is not negligence if ordinary prudent work[ers] under such conditions would have acted similarly." *Walsh v. Wild Masonry Co.*, 72 Wis. 2d 447, 453–54, 241 N.W.2d 416 (1976).

¶ 11. However, the court in *Walsh* observed: "Those cases in which the court has approved of the diversion-of-attention instruction are those in which the immediate hazard was unknown to one who was preoccupied in his work." *Id.* at 454. In *Suhaysik v. Milwaukee Cheese Co.*, 132 Wis. 2d 289, 295, 392 N.W.2d 98 (Ct. App. 1986), we cited *Walsh* and similarly stated: "To justify the instruction, there must be evidence of a particular and immediate hazard that was unknown to one who was preoccupied with or momentarily diverted by his work."

¶ 12. Tielens suggests that this means the hazard must be unknown prior to starting work so that the worker's preoccupation prevents discovery, and therefore avoidance, of the danger. This would prevent us from applying the preoccupied worker doctrine to Bain, since he knew of the unprotected stairwell before beginning his painting.

¶ 13. Early cases, however, acknowledge the possibility of being distracted from even a known hazard.

> Sometimes a person is bound to think with reference to where he is about to place his feet, but, generally speaking, one's attention may be diverted, even by small circumstances, so as to render him excusable by the standard of ordinary care for stepping into a hole or colliding with an obstruction which attention would readily disclose, *and even with which he is perfectly familiar.*

*Ennis v. M. A. Hanna Dock Co.*, 148 Wis. 655, 659, 134 N.W. 1051 (1912) (emphasis added). Moreover,

[o]ne is not bound, absolutely, to see every defect in his pathway which is plainly observable *nor to remember the existence of such a defect of which he has knowledge.* Any reasonable excuse, in view of the whole situation, for not doing so is sufficient to raise a jury question in regard to the matter. . . . [T]he presumption of want of due care from failure of a person to avoid danger from a known defect in his pathway or one plainly observable by him "is one which yields readily to any reasonable explanation" so as to raise a jury question.

*Hommel v. Badger State Inv. Co.*, 166 Wis. 235, 240, 165 N.W. 20 (1917). These cases have never been decidedly rejected.

¶ 14. These early cases can be harmonized with *Walsh*, which also states: "Only in those cases where *the party is unaware of a particular and immediate danger because of his preoccupation* or diversion of attention is he exonerated from exercising the usual care in recognizing the danger and avoiding it." *Walsh*, 72 Wis. 2d at 454 (emphasis added). That is, we can say the preoccupied worker doctrine applies not only when the worker is unaware because risk is unknown from the outset and preoccupation prevents the risk's discovery, but also when the worker is unaware because concentration on the task at hand has caused the worker to forget a previously acknowledged hazard.

¶ 15. Of course, this doctrine will not always apply. There must be sufficient evidence from which the fact-finder can infer the job caused a reasonable distraction. *Cf. Suhaysik*, 132 Wis. 2d at 296 (court properly refused to give jury instruction because evidence was that hazard was invisible, not that worker was preoccupied by job). In the current record, there is at least some evidence of how painting would have substan-

tially occupied Bain's attention. This doctrine, coupled with *McCrossen*, demonstrates why negligence is generally left to the jury and is not readily determinable on summary judgment: competing facts must be determined, then weighed, to arrive at a final conclusion.

### Tielens's Actions

¶ 16. Because the court granted summary judgment based on a comparative negligence analysis, it necessarily considered whether Tielens was negligent as well. The circuit court concluded, "the only negligence that can be attributed to Tielens is Tielens'[s] failure to discover that a subcontractor had removed the safety rail . . . ." The court also stated that nothing in the record shows Tielens had actual knowledge the stairwell was unprotected. However, the court's conclusion does not address whether the subcontractor's negligence must be imputed to Tielens and, while stressing Bain's knowledge, the decision does not consider whether Tielens had constructive notice of the missing railing.

¶ 17. A duty under the safe place statute, when that statute applies, is non-delegable. *See Barry v. Employers Mut. Cas. Co.*, 2001 WI 101, ¶¶ 39–42, 245 Wis. 2d 560, 630 N.W.2d 517. Tielens appears to acknowledge that, as general contractor, it had an obligation to maintain the railing. Thus, it may be irrelevant that one of the subcontractors removed the rail. The court, however, never performed this legal analysis because it was convinced Bain's decision to proceed with painting made him more negligent as a matter of law.

¶ 18. Moreover, constructive knowledge can substitute for actual knowledge. *Megal v. Green Bay Area Visitor & Conv. Bureau*, 2004 WI 98, ¶ 11, 274 Wis. 2d 162, 682 N.W.2d 857. When a safe place violation is alleged, "the general rule is that an employer or owner is deemed to have constructive notice of a defect or unsafe condition when that defect or condition has existed a long enough time for a reasonably vigilant owner to discover and repair it." *Id.*, ¶ 12.

¶ 19. Constructive notice usually requires evidence as to the length of time the condition existed, and the length of time necessary to constitute constructive notice depends on "surrounding facts and circumstances." *Id.*, ¶¶ 12–13. Here, Tielens's project coordinator gave deposition testimony that no one from Tielens was at the site while the subcontractors were working. But the coordinator also testified that he would inspect the site every two or three days. This means a Tielens representative could have been at the site up to seven times between Pride-Rock's first removing the railing and the day of Bain's injury. Accordingly, the fact Tielens lacked actual notice of the missing railing is not necessarily dispositive on the question of its comparative negligence should a jury conclude it had constructive notice.

¶ 20. Ultimately, this case contains too many competing facts and inferences regarding which party was negligent and to what extent. It is more appropriately resolved by a jury, not resolved on summary judgment.

*By the Court.*—Judgment and order reversed and cause remanded.