COURT OF APPEALS
DECISION
DATED AND FILED

October 21, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2136**

STATE OF WISCONSIN

Cir. Ct. No. 2016CV310

IN COURT OF APPEALS
DISTRICT II

MT. MORRIS MUTUAL INSURANCE COMPANY,

PLAINTIFF,

DARREL J. MAYES,

INVOLUNTARY-PLAINTIFF,

V.

EA RESTORATION, LLC AND WEST BEND MUTUAL INSURANCE COMPANY,

DEFENDANTS-THIRD-PARTY
PLAINTIFFS-APPELLANTS,

SANDOVAL CONTRACTING & REMODELING, LLC AND ROCKFORD MUTUAL
INSURANCE COMPANY,

DEFENDANTS,

V.

THE CHIMNEY GUY, LLC,

THIRD-PARTY DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Fond du Lac County: RICHARD J. NUSS, Judge. *Affirmed*.

Before Neubauer, C.J., Reilly, P.J., and Davis, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. EA Restoration, LLC, (EA) seeks contribution and/or indemnification from The Chimney Guy, LLC, for fire damage following a home restoration. The circuit court granted summary judgment to The Chimney Guy, and EA now appeals. We affirm as no reasonable jury could find negligence on behalf of The Chimney Guy, and even if some negligence is assumed, we conclude that public policy considerations preclude The Chimney Guy's liability in this case.

## Background

¶2 On January 6, 2015, a fire occurred at Darrel J. Mayes' home. To repair his home, Mayes hired EA, who subcontracted with The Chimney Guy and Sandoval Contracting & Remodeling, LLC (Sandoval).

¶3 In April 2015, The Chimney Guy installed a chimney system in Mayes' home. The chimney system started on the first floor, ran through the second floor, and ended above the roof. This chimney system consisted of a stove, chimney pipe, ceiling support package, universal adaptor, flashing storm collar, rain cap, and roof support brace kit. The Chimney Guy installed the ceiling support package between the first-story ceiling and the second-story floor. A ceiling support package functions to maintain a two-inch clearance between the chimney pipe and combustibles. The Chimney Guy also installed a chase to

enclose the chimney pipe running through the second story. The Chimney Guy did not install an attic insulation shield, as the chase enclosure served the same purpose—to prevent debris from entering the ceiling support box.

¶4 After The Chimney Guy completed the chimney system installation, Sandoval removed the existing roof and installed a new metal roof on Mayes' home. During this process, Sandoval had to remove two metal braces and flashing that supported the chimney pipe. Additionally, Sandoval may have had to remove the top two sections of the chimney pipe, the chimney cap, the storm collar, and other components. Neither EA nor Sandoval advised The Chimney Guy of this additional work above the chimney's ceiling support package or asked The Chimney Guy to inspect the chimney system to ensure proper clearances.

¶5 A second fire occurred at Mayes' home on January 7, 2016. Mayes' insurer, Mt. Morris Mutual Insurance Company, paid for the damage from this second fire and filed a subrogation claim against EA, Sandoval, and their respective insurers, alleging breach of contract and negligence. EA filed a third-party complaint seeking indemnification and/or contribution from The Chimney Guy.

¶6 EA's expert, Donald VanOss, a certified fire and explosion investigator, testified that the likely cause of the second fire was debris in the ceiling support package, although he could not rule out the roof line as the point of origin. VanOss could not determine how and exactly when the debris entered the support box, but he found no evidence to suggest the debris was present in the ceiling support package when The Chimney Guy completed the chimney installation. Neither VanOss nor any other parties' experts opined that The Chimney Guy deposited debris into the ceiling support box.

3

¶7    VanOss also opined that EA or Sandoval should have contacted a certified chimney inspector or installer after Sandoval completed its roof work, as an inspector or installer could have verified that Sandoval properly reconnected the chimney pipe and maintained the two-inch clearances from combustibles. VanOss also opined that a chase enclosure serves as an appropriate substitution for an insulation shield.

¶8    The circuit court granted The Chimney Guy's motion for summary judgment, concluding that EA's claims against The Chimney Guy were speculative ("a bunch of but-ifs"). EA appeals.

### Standard of Review

¶9    We review a grant or denial of summary judgment de novo. ***Bain v. Tielens Constr., Inc.***, 2006 WI App 127, ¶5, 294 Wis. 2d 318, 718 N.W.2d 240. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2017-18).[1]

### Discussion

¶10    EA first contends that there is a genuine issue of material fact as to whether The Chimney Guy's work led to combustibles entering the ceiling support package. We disagree. EA offers no evidence other than speculation that The Chimney Guy deposited the debris into the ceiling support package. EA also argues that there is a genuine issue of material fact as to whether The Chimney

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version.

Guy breached its duty of care when it failed to install an attic installation shield. This argument is dispelled by EA's own expert, VanOss, who testified that the chase was an appropriate alternative to the insulation shield. The installation manual for the chimney system installed by The Chimney Guy also provided that an enclosure is an alternative to the shield. No reasonable jury could find The Chimney Guy was negligent when it chose to install a chase in place of an attic installation shield or that in doing so, it caused or allowed combustibles to remain in the system.[2]

¶11    Denying recovery due to the speculative nature of any basis on which a jury could find causation finds further legal support from public policy considerations Wisconsin has long adhered to in limiting tort recovery. Meaning that, even if we were to assume negligence based on EA's speculations arising from the use of the chase enclosure, public policy considerations would preclude The Chimney Guy's liability in this case.

¶12    We may deny liability in cases of proven or assumed negligence upon any of the following six public policy grounds: "(1) 'the injury is too remote from the negligence'; (2) the recovery is 'wholly out of proportion to the culpability of the negligent tort-feasor'; (3) the harm caused is highly extraordinary given the negligent act; (4) recovery 'would place too unreasonable a burden' on the negligent tort-feasor; (5) recovery would be 'too likely to open

---

[2] Another expert, Christopher Andritsch, said the installation shield was required by the manual, and it would have prevented the second fire by preventing the combustible materials from entering the ceiling support box. Our review of the manual does not support the contention that an installation shield was required. Moreover, no expert opined that The Chimney Guy's installation of a chase enclosure around the chimney pipe from the chimney support box to the roof was improper or negligent.

the way to fraudulent claims'; and (6) recovery would enter into 'a field that has no sensible or just stopping point.'" *Hornback v. Archdiocese of Milwaukee*, 2008 WI 98, ¶49, 313 Wis. 2d 294, 752 N.W.2d 862 (citation omitted). We may refuse to impose liability upon public policy grounds without full resolution of a cause of action by trial. *Id.*

¶13    The first factor—whether the plaintiff's injury is too remote from the defendant's negligence—restates "the old chain of causation test." *Cefalu v. Continental W. Ins. Co.*, 2005 WI App 187, ¶20, 285 Wis. 2d 766, 703 N.W.2d 743. A finding of remoteness essentially is "a determination that a superseding cause should relieve the defendant of liability." *Id.*, ¶21. To assess remoteness, we consider "the time, place or sequence of events" and "whether 'the chain of causation was direct and unbroken.'" *Kidd v. Allaway*, 2011 WI App 161, ¶14, 338 Wis. 2d 129, 807 N.W.2d 700 (citation omitted); *see also Beacon Bowl, Inc. v. Wisconsin Elec. Power Co.*, 176 Wis. 2d 740, 762, 501 N.W.2d 788 (1993).

¶14    Here, the fire damage was too remote from any alleged negligence of The Chimney Guy. Specifically, the sequence of events and the broken chain of causation points to remoteness. After The Chimney Guy installed the chimney system, Sandoval altered The Chimney Guy's work. Neither EA nor Sandoval advised The Chimney Guy of the alteration to its work. Neither EA nor Sandoval asked The Chimney Guy or any other certified chimney inspector or installer to verify proper clearances were maintained after they had altered The Chimney Guy's work. Sandoval's alterations broke any chain of causation between The Chimney Guy's work and the fire damage. Thus, the damage from the second fire was too separate and removed from any alleged negligence of The Chimney Guy.

¶15    As no genuine issues of material fact exist as to The Chimney Guy's negligence, we affirm the circuit court's grant of summary judgment to The Chimney Guy.[3]

*By the Court.*—Order affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[3] Given our decision, we need not address The Chimney Guy's procedural and evidentiary objections, which were not raised before the circuit court, including its contention that late filings precluded consideration and that certain expert testimony was inadmissible.