COURT OF APPEALS
DECISION
DATED AND FILED

December 12, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP868**

STATE OF WISCONSIN

Cir. Ct. No. 2022CV38

IN COURT OF APPEALS
DISTRICT IV

---

MARK A. MELVIN,

    PLAINTIFF-APPELLANT,

QUARTZ HEALTH INSURANCE CORPORATION,

    INVOLUNTARY-PLAINTIFF,

  V.

LM GENERAL INSURANCE COMPANY,

    DEFENDANT-RESPONDENT.

---

APPEAL from a judgment of the circuit court for Columbia County: TROY D. CROSS, Judge. *Reversed and cause remanded*.

Before Kloppenburg, P.J., Graham, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Mark Melvin brought this action seeking damages for injuries that he sustained when he lost control of his motorcycle allegedly as a result of Richard Ryan's negligent operation of Ryan's vehicle. The circuit court granted summary judgment to Ryan's insurer, LM General Insurance Company, dismissing the complaint. The court concluded that, as a matter of law, Melvin was negligent for attempting to pass Ryan's vehicle in a no-passing zone and no jury could find that Ryan was negligent.

¶2 On appeal, Melvin argues that genuine issues of material fact—as to both drivers' contributory negligence and whether any negligence on the part of Melvin was greater than any negligence on the part of Ryan—preclude summary judgment. We agree and, accordingly, reverse and remand.

## BACKGROUND

¶3 The following undisputed facts, taken from the summary judgment submissions, provide the context for the analysis that follows.

¶4 On a July afternoon in 2020, when Melvin was 64, Melvin was on his motorcycle traveling within the speed limit, between 45 and 55 miles per hour, on a two-lane road heading up a slight incline west from Lodi to his home. Ahead of him, Ryan was driving a pick-up truck pulling a trailer loaded with hay bales, traveling on the same road at about 20 miles per hour, heading west from his farm's driveway to a leased farm's driveway. As Melvin neared the truck and trailer, he saw it slow down and almost come to a full stop. Melvin was beginning to pass the truck and trailer when he saw the truck and trailer start to turn left into

2

the leased farm's driveway. Melvin applied his front and rear brakes "hard" and then released the rear brake, at which point the motorcycle began to skid and Melvin came off of the motorcycle. A solid yellow line separated the two lanes where Melvin began to pass the truck and trailer.

¶5 Melvin filed a complaint alleging that Ryan's negligence in his operation of the truck and trailer caused the injuries that Melvin sustained when Melvin came off of the motorcycle. In the course of the litigation, Melvin named Ryan and three insurance companies as defendants, and all defendants except LM General Insurance Company were dismissed voluntarily or by stipulation.

¶6 LM General filed a motion for summary judgment seeking dismissal of the complaint. The circuit court issued an oral ruling, followed by a written order, granting the motion. As stated, the court concluded that, as a matter of law, Melvin was negligent for attempting to pass Ryan's vehicle in a no-passing zone and no jury could find that Ryan was negligent.

## DISCUSSION

¶7 We review a grant of summary judgment de novo. ***Bank of New York Mellon v. Klomsten***, 2018 WI App 25, ¶31, 381 Wis. 2d 218, 911 N.W.2d 364. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and a party is entitled to a

judgment as a matter of law. WIS. STAT. § 802.08(2) (summary judgment to moving party) and (6) (summary judgment to non-moving party).[1]

¶8      This court views the summary judgment materials "in the light most favorable to the party opposing summary judgment." *United Concrete & Constr., Inc. v. Red-D-Mix Concrete, Inc.*, 2013 WI 72, ¶12, 349 Wis. 2d 587, 836 N.W.2d 807. "[I]f more than one reasonable inference can be drawn from the undisputed facts, summary judgment is not appropriate." *Schmidt v. Northern States Power Co.*, 2007 WI 136, ¶47, 305 Wis. 2d 538, 742 N.W.2d 294.

¶9      Wisconsin is a comparative negligence state. WIS. STAT. § 895.045(1). Under our system of negligence apportionment, a plaintiff's contributory negligence does not bar recovery when the plaintiff's negligence is not greater than the defendant's negligence. *Id.*; *Bain v. Tielens Constr., Inc.*, 2006 WI App 127, ¶5, 294 Wis. 2d 318, 718 N.W.2d 240. The apportionment of comparative negligence is generally a matter left to the trier of fact. *Phelps v. Physicians Ins. Co. of Wis.*, 2005 WI 85, ¶45, 282 Wis. 2d 69, 698 N.W.2d 643. However, the court must bar recovery when the plaintiff's negligence is greater than the negligence of the defendant as a matter of law. *Jankee v. Clark County*, 2000 WI 64, ¶50, 235 Wis. 2d 700, 612 N.W.2d 297.

¶10      Here, the circuit court granted summary judgment dismissing the complaint based on its conclusion that, as a matter of law, Ryan was not negligent and Melvin was negligent for attempting to pass Ryan in a no-passing zone. However, as we now explain, the summary judgment submissions establish that

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

there are disputes of material fact as to both Ryan's and Melvin's contributory negligence, and that, in light of those disputes, we cannot conclude that any negligence on the part of Melvin was greater as a matter of law than any negligence on the part of Ryan.

¶11    The disputes of material fact include at least the following.

¶12    *Lights/turn signals*.   One set of disputes of fact material to the comparative negligence of Melvin and Ryan is whether the truck's and trailer's brake lights were illuminated when Ryan slowed before making the turn, and whether the truck's and trailer's turn signals were on before Ryan made the turn and, if so, for what period of time.  Melvin testified that he did not see tail lights, flashing hazard lights, or turn signals as he approached the truck and trailer, and he believed that there were none.  Ryan testified that:  he tested the truck's and trailer's tail lights, brake lights, flashing hazard lights, and turn signals after he connected the trailer to the truck and all lights were working when he tested them the afternoon of the incident; he plugs in the trailer's electrical hook-up separately from physically connecting the trailer to the truck; the driver has to turn off the hazard lights in order to turn on the turn signals; and he travelled with the flashing hazard lights on for the entire distance between the two driveways until he turned off the hazard lights and turned on the turn signals when he was about 350 feet from the leased farm's driveway.

¶13    The parties' experts did not opine as to whether the truck's and trailer's lights and turn signals were on before Ryan made the turn.  The Columbia County Sheriff's Deputy who responded to the accident testified that a photograph of the truck stopped in the driveway after completing the turn showed the truck's tail lights illuminated, another photograph of the trailer in the same location

5

showed no tail lights illuminated on the trailer, and yet another photograph of the trailer showed the trailer's tail lights illuminated.

¶14 These aspects of the testimony and evidence summarized above establish disputes of material fact as to whether the truck's and trailer's brake lights and turn signals were on before Ryan began making the left turn into the leased farm's driveway. The potential significance of these disputes is that, if the truck's and trailer's turn signals were not on, viewing the facts in the light most favorable to Melvin, a jury could find that Melvin may have reasonably believed that it was safe to pass and that Ryan may have negligently failed to alert Melvin that Ryan saw Melvin behind him when Ryan was preparing to make a left turn. How a jury were to resolve these factual disputes would inform the jury's apportionment of negligence between Melvin and Ryan.

¶15 *Location of truck and trailer before turn.* Another set of disputes of fact material to the comparative negligence of Melvin and Ryan is whether Ryan's truck and trailer were partially or wholly on the gravel shoulder to the right of the roadway, or only on the roadway, before Ryan made the turn to the left, such that Melvin would have seen Ryan's truck and trailer move to the right of the roadway as Melvin approached. Melvin's expert opined that "the positions of the … trailer in the turn" indicated that the truck and trailer were on the shoulder to the right of the roadway before Ryan made the turn. The Columbia County Sheriff's Deputy testified that the trailer's tire tracks indicated the same. Melvin's expert also opined that Ryan would not have been able to see the motorcycle in his left-side mirror, as Ryan testified he did first when the motorcycle was about 2,000 feet behind him and second when the motorcycle was about 1,000 feet behind him, unless the truck and trailer were on the shoulder.

¶16    Ryan testified that he made the turn solely from the roadway and had not pulled over to the shoulder on the right.  Ryan's expert opined that, before Ryan made the turn, the truck's and trailer's right-side inner tires were on the line separating the roadway from the shoulder, and the right-side outer tires were at least partially over that line.  Ryan's expert also opined that Ryan would have been able to see the motorcycle behind him if the truck and trailer were so situated.

¶17    These aspects of the testimony and evidence summarized above establish disputes of material fact as to where the truck and trailer were located when Ryan was slowing down and beginning to make the left turn.  The potential significance of these disputes is that, if Melvin saw Ryan's truck and trailer partially or wholly on the shoulder when the truck and trailer were slowing down and coming almost to a full stop, viewing the facts in the light most favorable to Melvin, a jury could find that Melvin may have reasonably believed that it was safe to pass.  How a jury were to resolve these factual disputes would inform the jury's apportionment of negligence between Melvin and Ryan.

¶18    *Time to stop*.  Another set of disputes of fact material to the comparative negligence of Melvin and Ryan is whether Melvin reasonably or negligently believed that he needed to brake "hard," thereby leading to the loss of control of the motorcycle, to avoid hitting Ryan's truck and trailer as Ryan made the left turn.  Melvin testified that he had started to pass Ryan's truck and trailer when he saw Ryan start to turn, at which point he "hit both brakes hard."  Ryan testified that as he was making the turn he saw Melvin fishtailing about 300 feet behind him.  Melvin's expert opined that Melvin was about 200 feet behind Ryan's trailer when Melvin started braking and that Melvin had time to bring his motorcycle to a controlled stop without hitting Ryan's truck and trailer or losing

control of his motorcycle. Ryan's expert opined that Melvin was about 136 feet behind Ryan's trailer when Melvin started braking and that Melvin could have brought his motorcycle to a controlled stop in 107 feet.

¶19 These aspects of the testimony and evidence summarized above establish disputes of material fact as to whether, when Melvin applied the brakes hard, Ryan had begun his turn to the left and Melvin had time to stop without losing control of the motorcycle or hitting Ryan. The potential significance of these disputes is that, viewing the facts in the light most favorable to Melvin, a jury could find that Melvin may have reasonably believed that he did not have time to bring the motorcycle to a controlled stop in order to avoid hitting the truck and trailer when he saw the truck and trailer turning, and that he had to apply the rear and front brakes hard to avoid a collision. Moreover, that Melvin may have been able to avoid losing control of his motorcycle does not mean that Ryan was not negligent. How a jury were to resolve these factual disputes would inform the jury's apportionment of negligence between Melvin and Ryan.

¶20 *Path of motorcycle.* Another set of disputes of fact material to the comparative negligence of Melvin and Ryan is whether Melvin was at any time in the eastbound lane as he neared Ryan's truck and trailer. Both parties' experts opined that: the skid marks in the road showed that the motorcycle was in the westbound lane when Melvin applied the brakes; the motorcycle stayed in the westbound lane until Melvin came off of the motorcycle; the motorcycle ultimately coasted to a stop in the eastbound lane; and Melvin was not ever in the eastbound lane. Melvin testified that he was in the eastbound lane when he was attempting to pass the truck and trailer.

¶21 These aspects of the testimony and evidence summarized above establish disputes of material fact as to whether Melvin was in the eastbound lane when he began to pass the truck and trailer, before he applied the brakes in the westbound lane. How a jury were to resolve these factual disputes would inform the jury's apportionment of negligence between Melvin and Ryan.

¶22 In light of these disputes of material fact, a circuit court could not conclude that, as a matter of law, any negligence on the part of Melvin was greater than any negligence on the part of Ryan so as to bar recovery. We now address and reject LM General's arguments to the contrary.

¶23 LM General argues that Melvin's negligence was greater than 50% as a matter of law for three reasons: (1) Melvin's injuries were either solely or primarily caused by his own negligent management and control of his motorcycle; (2) Melvin violated state traffic laws; and (3) Melvin was the primary cause of his injuries by attempting to pass Ryan given the circumstances. As we explain, LM General's arguments lack merit because they disregard the disputes of material fact discussed above and rely on inapposite case law.

¶24 *Melvin's management and control of his motorcycle.* LM General argues that Melvin was negligent in his management and control of his motorcycle because, according to LM General, it is undisputed that, "when Melvin recognized that the Ryan vehicles were slowing and he began braking, Melvin had more than enough time to come to a controlled stop without any injury had he properly maintained both brakes." However, based on the evidence summarized above, a jury could find that Melvin reasonably believed that he did not have time to come to a controlled stop without braking hard. More importantly, even if there were no dispute that Melvin was negligent in this respect, a court cannot conclude that such

negligence was greater than 50% given the many disputed facts as to the potential contributory negligence of both Melvin and Ryan in other respects, including whether Melvin was negligent when he began passing Ryan and whether Ryan was negligent based on where his truck and trailer were located and whether his brake lights or turn signals were on.

¶25    *Violation of traffic laws.*  LM General argues that, whether Melvin was attempting to pass in the eastbound or westbound lane, he violated certain traffic laws.[2]  Therefore, LM General contends, Melvin was negligent and cannot prevail in his claim against Ryan.  This argument fails because LM General cites no legal authority to support the proposition that violating a traffic law establishes negligence greater than 50%.

¶26    *Primary cause of injuries.*  LM General argues that Melvin caused his own injuries by "attempt[ing] to pass Ryan's huge truck/trailer vehicles in a no-passing zone," up a slight incline, on a "narrow" two-lane road, and then not controlling his motorcycle when he had time to bring his motorcycle to a controlled stop without hitting Ryan.  This argument isolates only a narrow subset of the potentially relevant factual circumstances and disregards the disputes regarding the various respects in which both Melvin and Ryan may have been

---

[2] More specifically, LM General argues that, if Melvin crossed the yellow line into the eastbound lane when he began to pass Ryan, then Melvin violated WIS. STAT. § 346.09(3)(b). That statute provides that a person may not, in a no-passing zone, cross into the left side of the center of the road to pass "an implement of husbandry … traveling at a speed less than half of the applicable speed limit."  Sec. 346.09(3)(b).  LM General argues that Ryan's trailer is an implement of husbandry as defined in § 340.01(24)(a)1.c. and that Melvin had "no legal basis" to pass Ryan's truck and trailer by crossing into the eastbound lane.  Alternatively, LM General argues that, if Melvin was only in the westbound lane when he began to pass Ryan, then Melvin violated WIS. STAT. § 346.595(1), which provides that "no vehicle may be driven or operated in such a manner so as to deprive any other vehicle of the full use of a traffic lane."

10

contributorily negligent, and whether any negligence of Melvin was greater than any negligence of Ryan, as summarized above.

¶27   In addition, the circumstances here are easily distinguished from the circumstances in the cases cited by LM General, in which the court has ruled that the plaintiff was more than 50% negligent as a matter of law. Those cases involve extreme facts, such as a plaintiff suing for injury or death that occurred when the plaintiff was fleeing from the police or security guards in such a way as to put the plaintiff in a position of known danger—*see Brunette v. Employers Mut. Liab. Ins. Co. of Wis.*, 107 Wis. 2d 361, 362-63, 320 N.W.2d 43 (Ct. App. 1982) (plaintiff ran stop signs and crashed a motorcycle while trying to evade police); *Peters v. Menard, Inc.*, 224 Wis. 2d 174, 179-82, 589 N.W.2d 395 (1999) (plaintiff fled from security guards after taking a drill from a store and jumped into a flooded river)—or trying to escape by jumping out of a window—*see Jankee*, 235 Wis. 2d 700, ¶¶35-39 (plaintiff who failed to comply with treatment program tried to escape from a health center by climbing out a window and falling from the roof). Here, by contrast, Melvin tried to overtake and pass a slow-moving farm vehicle on a country road, which the parties do not dispute is a common occurrence on rural roads in Wisconsin and one that, under the circumstances summarized above, cannot be deemed to constitute negligence that was "'so clear and the quantum so great'" as to be greater than 50% as a matter of law. *See id.*, ¶50 (quoted source omitted).

¶28   Separately, LM General argues that Ryan's negligence was less than Melvin's negligence as a matter of law, such that the circuit court did not err in not considering the negligence of Ryan. LM General essentially reiterates the arguments we have addressed and rejected above, in support of its assertion that, even if Ryan did not have his brake lights and turn signals on, any negligence that

11

could be attributed to that failure was outweighed by the "foolish" actions by Melvin. Just as disputes of material fact preclude a court from concluding that any negligence on the part of Melvin was greater than 50% as a matter of law, so do those same disputes preclude a court from concluding that any negligence on the part of Melvin was greater than any negligence on the part of Ryan as a matter of law. In short, it is for the trier of fact to evaluate the comparative negligence of Melvin and Ryan based on the facts found by the trier of fact.

¶29 Finally, LM General argues that public policy considerations support a determination that Melvin's negligence outweighed any negligence on the part of Ryan. LM General argues that Ryan's version of the facts establish that "Melvin's injuries are too remote and out of proportion to any possible negligence on the part of Ryan." According to LM General, to allow recovery to Melvin for injuries incurred when he tried to pass "a very large truck/trailer, in an uphill no-passing zone," would cause more accidents by requiring drivers "to pay more attention to what is happening behind them" than around and in front of them. This argument fails because, like LM General's other arguments, it disregards the disputes of material fact regarding the parties' potential contributory negligence and how that negligence might be apportioned.

## CONCLUSION

¶30 For the reasons stated, we reverse and remand.

*By the Court*.—Judgment reversed and cause remanded.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.